Daniel, J.
In the Court below, exceptions were taken by the demandant to four several opinions of the Judge, delivered upon questions arising during the progress of the trial before the jury. And the supposed errors, in these opinions, are here assigned and insisted on as causes for reversing the judgment. By the first bill of exceptions, it appears, that, on the trial of the cause, the tenants offered in evidence the patent of the Commonwealth to John Boswell, dated 3d June 1794, under which they claimed to derive title to the land in controversy. The demandant objected to its reception as evidence, and also to any evidence in support of the right of Hezekiah Harman, the ancestor and devisor of the tenants, which they could offer, on the ground that he held a deed of conveyance, with special warranty for *162 the land in controversy from the said Hezekiah Harman, dated 14th February 1818. This deed, which is set out in hcec verba, in the bill of exceptions, and purports to be an indenture between Harman and wife of one Part> an(* John Wynn of the other, “ witnessed that Harman and wife, for the consideration of one hundred and fourteen dollars and eighty-eight cents, the receipt of which is acknowledged, have sold all their claim in and to” the land in controversy, describing it as the “ Currin place, which was conveyed to Currin by Daniel Harman, sr.” The warranty is as follows: “ The said Harman and wife, for themselves and their heirs, the said right as it was invested in Daniel Harman, to the said John and his heirs, against themselves and their heirs, will warrant and defend; it is fully understood, if said title should prove insufficient in law or equity, the said Wynn and heirs is to have no recourse, he knowing the whole circumstance.” By this deed the demandant contended the tenants were estopped to shew title in themselves derived from the bargainor in that deed, by his procuring the Boswell title subsequent to the date of his deed ; but the Court overruled the objection, saying that this was not the proper time to raise the question as to the effect of that deed; but the parties having argued the question in this stage of the proceedings, the Court expressed the opinion that said deed was no estoppel to the tenants to shew better title to the land demanded, than the demandant; and permitted the tenants to introduce their testimony. The tenants then proceeded regularly to deraign their title, by exhibiting, first, the patent aforesaid to Boswell, then the will of Boswell devising the land to Thomas Johnson, the will of said Johnson devising it to Chapman Johnson and other devisees, a decree of partition between the latter, and an allotment, under it, of the land in controversy, to said Chapman, his deed conveying to Hezekiah Harman, and lastly, the will of the latter *163 devising to the tenants. The demandant thereupon, after first, however, introducing his written evidence, (which consisted of the patent of the Commonwealth, of date the 27th September 1796, to Daniel Harman, his deed to Hugh Currin, dated 30th June 1814, the said Currin’s deed to Hezekiah Harman, of the 21st July 1817, and the deed of the 14th February 1818, of the said Harman, conveying the land to the demandant,) moved the Court “to exclude from the consideration of the jury, all the written evidence offered and introduced by the tenants as aforesaid, upon the ground that the said deed from Hezekiah Harman to the demandant was an estoppel, and prevented him and the tenants, his devisees, from contesting the claim and title conveyed to demandant by said Hezekiah Harman as aforesaid.” The Court refused to exclude the evidence ; and the refusal to do so caused the fourth bill of exceptions. There might be some doubt whether the state of the case was such, when the first bill of exceptions was signed, as properly to present the question of the estoppel; but it is not necessary to pursue any such enquiry, as the same question does properly arise on the fourth bill of exceptions.
Does, then, the doctrine of estoppel apply to such a deed as that of the 14th February 1818? If it does, it must be because of some technical rule imparting peculiar force to the instrument of conveyance used; inasmuch as it is manifest, from the language of the deed, giving to it its ordinary signification, that it was the purpose of the grantor to convey only such claim and title to the land as he had at the date of the conveyance. I know of no rule requiring the estoppel to be extended beyond what is called for by the plain import of the terms employed by the grantor in the deed. In the absence of a general warranty, there is nothing in the nature of the instrument used, justifying the grantee in claiming under it any thing further than the specific title or claim which it purports to convey.
*164 It is true, as a general proposition, that no man shall be permitted to gainsay what he has solemnly averred by his deed. Every man is bound to speak and act ac- • cording to the truth and fact of the case; and the law only presumes that he has done so, but denies him the right to contradict such reasonable presumption. When, therefore, a grantor recites that he has an indefeasible title to the land conveyed, or uses terms or modes of conveyance from which such fact is fairly to be inferred, he and those claiming under him, are generally estopped to deny such fact, or to oppose the legal consequences flowing from it. If, however, by the same deed which would otherwise work the estoppel, it appears that the grantor had only a particular claim or title, the estoppel would be defeated. Wheelock v. Henshaw, 19 Pick. R. 341.
In the deed before us, there is no recital of a good' and indefeasible title; no terms used which import it; no conveyance of, nor undertaking to convey, the land. The deed merely purports to sell all the grantor’s claim to the land. The position which the tenants now occupy, contradicts no averment of that deed. They do not now deny that Hezekiah Harman, their devisor, had such claim as he undertook by his deed to sell. They do not call in question the fact that such claim passed to the demandant by said deed, to avail him to the extent of its worth. As to what is the extent of its worth, what is its legal value and weight in a comparison of titles between them and the demandant, there is nothing, in the deed, estopping them to enquire. Their pretension consists, not in the denial that Hezekiah Harman had any title at the time of his conveyance to the demandant, but in the assertion of an independent and paramount title, since acquired by the said Harman, and transmitted to them by his will.
In the warranty there is no undertaking to defend any other title or estate than that which the deed purports *165 to convey. It refers only to “the said right,” (meaning the claim sold,) “ as it was invested in Daniel Harman,” and not to any other right or title which might be afterwards acquired. There are no terms used in the deed implying any covenant against eviction; and to exclude all inference of an intention on the part of the bargainor to convey or warrant a perfect title, it is expressly stipulated, that “if the title should prove insufficient in law or equity, the said Wynn and heirs is to have no recourse ; he knowing the whole circumstance.” If Johnson, or any stranger claiming under him, had brought suit against Wynn, the demandant, and had recovered the land from him, the latter would have been wholly without remedy. And I cannot conceive upon what principle the bargainor in such deed as the one before us, can be estopped from acquiring and maintaining any title, the purchase and successful assertion of which against the demandant, by a stranger, would have left the demandant without recourse against his bargainor. It seems to me, therefore, that the Judge of the Circuit Court committed no error in giving the opinions set forth in the first and fourth bills of exceptions.
There is no statutory provision regulating the manner in which the records of the proceedings of a Court in our State are to be authenticated so as to make them evidence in any other Court in the State; and I think the objections made by the counsel to the introduction of the copies of the wills of John Boswell and Thomas Johnson, and of the orders of probat thereof, were properly overruled by the Court below. These copies were certified and attested in the manner which it is believed has been heretofore generally adopted; and which has at least received the silent sanction of the Courts. I know of no case in which such an objection has been raised, except in the case of Gibson v. Commonwealth, 2 Va. Cases 111, cited at the bar, in which the General Court sustained such a certificate. There *166 was, in my opinion, therefore, no good and sufficient ground for the second bill of exceptions. It does not appear from the third bill of exceptions, at what stage of the cause, or for what purpose, the decree of the Court, and rePor(i ^ commissioners therein mentioned, were offered as evidence. Their introduction was opposed on two grounds. The first objection, that they were not properly certified, has been already considered; as the certificate was the same as that objected to in the second bill of exceptions. The force of the second objection, that they were only portions of the record, must depend mainly on the circumstances under which, and the purposes for which, they were offered in evidence. It is true, as a general proposition, that a party desiring to avail himself of record evidence, must produce all of the record relating to the subject matter; but there are cases where portions of the record are competent and sufficient evidence to establish the fact which they are offered to prove. As where the question is merely whether a decree has been rendered, the exhibition of the decree itself is all that the law requires. White v. Clay's ex'ors, 7 Leigh 68. The demandant has failed to set forth in his bill of exceptions any statement of facts from which it could be inferred that the decree was not legal evidence. We must presume that the judgment and opinion of the Court below in the matter was right; and that circumstances existed, justifying the introduction of these papers, the contrary not appearing.
The act of Assembly, 1 Rev. Code, ch. 99, § 14, p. 365, requires that every partition of any tract of land made under any order or decree of any Court, and every judgment or decree by which the title to any tract of land shall be recovered, shall be duly recorded in the Court of the county in which such land or a part thereof shall lie; and that until so recorded, such partition, judgment or decree shall not be received in evidence in support of any right claimed by virtue thereof. And it *167 is urged in this Court, that the decree of partition above referred to in the case of Johnson v. Johnson, was improperly received in evidence by the Court below, as it does not appear from the record that said decree had ever been recorded in the county of Tazewell, where ' the tract of land lies. This objection was not taken in the Court below, and cannot avail the demandant here. Specific objections to the testimony were taken before the Judge of the Circuit Court, and his refusal to sustain them excepted to. Other objections raised here for the first time, cannot properly be considered by this Court. The tenants may have been ready to shew that the decree of partition had been duly recorded; and may have failed to furnish the proof, under the belief that the demandant had waived any objections founded on the absence of such proof, by resting his objections to the competency of the evidence on other grounds. Besides, we have no complete record of the proceedings before us, and do not know that evidence of the recording of the decree may not have been given during the progress of the trial.
I see no error in any of the proceedings, and am of opinion to affirm the judgment.
The other Judges concurred in the opinion of Daniel, J.
Judgment affirmed.