Lee, J.
This is an action of ejectment by the plaintiff in error against the defendant, brought in the Circuit court of Preston county.
The plaintiff claimed under a grant from the commonwealth to his lessor Henry Wild, for seventy-nine acres of land in Preston county, bearing date the 31st of August 1836. The defendant claimed under a grant to Francis and William Deakins for three hundred acres of land, bearing date on the 2d day of December 1785. This grant embraced within its boundary sixty-nine and a half acres of the land covered *407 by the grant subsequently issued to the lessor of the plaintiff.
The defendant deduced title to the three hundred acre tract by a regular succession of conveyances from the patentees down to himself. Pie also proved that on the 23d of June 1840 the lessor of the plaintiff executed a written instrument, under seal, by which he acknowledged that he had on that day rented of John Hoye and William Deakins (who then claimed the land under the Deakins grant,) the said tract of three hundred acres, for one year ending on the 1st of April 1841, at which time he thereby bound himself to surrender possession, or rent or purchase the land. It was also shown that in 1841 the lessor of the plaintiff having failed to surrender possession of the land, a writ of unlawful detainer was sued out against him, and possession recovered by the defendant; and that the defendant held the possession at the institution of this suit.
The plaintiff claimed, however, that all title under the grant of the three hundred acre tract to the Deakinses had been forfeited to the commonwealth by the failure of the owners to comply with the provisions of the statutes concerning delinquent and omitted lands; and that by virtue of the same statutes this forfeiture enured to his benefit, and the title had become transferred to and vested in him, for so much of the land foi'feited as was embraced within the boundary of his patent for seventy-nine acres.
He accordingly shewed that he had had his land regularly entered on the books of the commissioners of the revenue and charged with taxes, and that he had paid all taxes properly chargeable upon it; but that the tract of three hundred acres granted to the Deakinses had never been entered on the books nor charged with taxes, till the year 1839, when the same was entered upon said books, but was not charged *408 either with any arrears of taxes or with any damages; and that the same had been subsequently by a decree of the Circuit court of Preston county, pronounced on the 7th day of September 1841, directed to be sold as land forfeited to the commonwealth under the provisions of the laws then in force. A sale took place under this decree in June 1842, and John Hoye became the purchaser; and this sale was subsequently confirmed by the court.
The facts having been submitted to the court for its judgment in the form of a case agreed, the court was of opinion that the law was for the defendant, and judgment was rendered accordingly. And to this judgment a supersedeas from this court has been allowed.
That the provisions of our statutes passed from time to time, making it the duty of the owners of lands to pay all taxes properly chargeable thereon, and where they have been omitted from the books of the commissioners of the revenue, to cause them to be entered thereon in the proper counties, and to be charged with all arrearages of taxes and damages, and to pay all such arrearages as shall be found not to be released by law; and in case of failure so to do, forfeiting to the commonwealth all right and title whatever of the parties in default, (under the modifications and restrictions provided by the acts,) are within the constitutional competency of the legislature, has been sufficiently affirmed in decisions which have been made during the present term of this court in eases arising under these several statutes. Staats’ lessee v. Board, supra 400; Smith's lessee v. Chapman, infra; Hale v. Branscum, infra. The same cases also sufficiently establish that in order to consummate and perfect a forfeiture in such a case, no judgment or decree or other matter of record, nor any inquest of office, is necessary; but that the statutes themselves, of their own force and by their *409 own energy, work out their own purpose, and operate effectually to divest the title out of the defaulting owner, and perfectly to vest it in the commonwealth without the machinery of any proceeding of record, or anything in the nature of an inquest of office. And as the title is thus in a proper case divested out of the owner and vested in the commonwealth by the operation of the statutes, so where the forfeiture enures to the benefit of a third person claiming under the commonwealth by virtue of another and distinct right, the transfer of the title to such person is in like manner perfect and complete without any new grant from the commonwealth, or any proceeding to manifest the transfer by matter of record or otherwise. Upon these subjects I have nothing therefore to say upon this occasion, except that considering the peculiar condition of things in that part of the state lying west of the Alleghany mountains, and the serious check to population and the improvement of the country and the development of its- resources growing out of it, a resort to the stringent measures of legislation that were adopted was, in my opinion, as wise and expedient as the constitutional power of the legislature to enact them was clear and unquestionable.
In this case, the tract of three hundred acres granted to Francis and William Deakins in December 1785, having never been entered upon the books of the commissioners of the revenue in any county, nor charged with taxes according to law prior to the year 1839, was therefore clearly forfeited to the commonwealth under the second section of the act of Februaiy 27th, 1835. Sess. Acts 1834-5, p. 12. And this forfeiture became perfect and consummate on the 1st of November 1836, at which period the further time given by the act of March 23d, 1836, Sess. Acts 1835-6, p. 7, within which the owners of delinquent and omitted lands might save a forfeiture by complying with the *410 provisions of the act, expired by express limitation. For although by subsequent acts, the owner might have redeemed any forfeited land by complying with the provisions of the act at any time prior to the 1st of-July 1838, (at which the ultimate period of redemption provided by law expired,) yet that day was suffered to pass by without any effort to redeem this land on the part of those claiming title to it. The only questions then to be considered are, 1st, whether the plaintiff was at any time before the institution of his suit, in a condition to claim the benefit of the forfeiture of the Deakins title, and so to weld the same to the junior and defective title conferred by the commonwealth’s grant to him in 1836, as to enable him to recover against the purchaser (or those claiming under him,) at the sale of the land, as forfeited, by the com-. missioner .under the decree of the Circuit court of Preston; and 2dly, whether if under the provisions of the several acts concerning delinquent and forfeited lands, or of any of them, he could show himself entitled to claim the benefit of the forfeiture of the Deakins title, there is anything in the circumstances of this case, especially the fact of the decree for the sale of the land as forfeited by the Circuit court of Preston in September 1841, or that of his renting the land of Hoye who claimed under the Deakins title, for the year ending in April 1841, that can deprive him of the right to set up such claim and to recover against the defendant in this action.
It is clear that under the provisions .of the act of February 27th, 1835, the plaintiff can claim no benefit of the forfeiture of the Deakins title; because by the express terms of that act a forfeiture only enured to the benefit of those who claimed title under a grant from the commonwealth bearing date previous to the 1st of April 1831. Neither can he sustain such a claim under the provisions of the act of March 30th, 1837; *411 because the saving clause in the first section of that act only provides for bona fide occupants claiming under prior grants, whose rights were protected and • secured under the provisions of the several acts theretofore passed on the same subject and then still in force. Nor could the plaintiff make good his claim under the sixteenth section of the act of March 16th, 1838, Sess. Acts 1837-8, p. 21; because the. transfers of title vested in the commonwealth by forfeiture, declared and provided by that act, are confined to the cases of persons at the date of the act in the actual possession and occupancy of the lands forfeited or parcel thereof, with title bona fide claimed or derived under grants from the commonwealth which issued subsequent to the 31st day of March 1831 and prior to the 15th of January 1838 ; and the case agreed here is silent as to the bona fides of the plaintiff’s claim. It may be doubted too, perhaps, whether under the particular terms of that section the right to set up such a transfer of title is not restricted to the purpose of defence by the occupant against whom an action might be brought for the recovery of the land then in his possession. And I think the plaintiff cannot bring himself within the provisions of the act of March 18th, 1841, Sess. Acts 1S40-41, p. 31, because under them the forfeiture is made to enure to the benefit of those then in actual possession of the forfeited land under claim of title .through a grant from the commonwealth: And although the lessor of the plaintiff was in fact in possession of this land at the date of the act last mentioned, yet his possession was not under his own grant but as the tenant of Hoye; and' thus he was not within the condition of the transfer prescribed by the act. But I think the. act of March 22d, 1842, Sess. Acts 1841-2', p. 13’, fully covers the case. By the third section of that act the title to forfeited lands is transferred to and vested in such persons (other than those for whose default the *412 same may have been forfeited,) as had title or claim legal or equitable derived under a grant from the commonwealth bearing date prior to the 1st of January 1843, without making actual occupancy or possession of the land any part of the condition on which the transfer of title takes effect; and the qualification of a Iona fide claim of title is in like manner omitted. At the date-of this act the lessor of the plaintiff was clearly in the category which it described. The Deakins title had been forfeited and was then vested in the commonwealth, and he had a junior grant for a portion of the land, and had had it duly assessed, and had paid all taxes charged and properly chargeable on the same. There was nothing then to prevent this act from transferring to him the Deakins title to the land embraced within his grant, (or to so much of it as lay within the Deakins grant,) unless it be that before the passage of that act, the land granted by the patent to Deakins had been reported to the Circuit court as forfeited, and an order made, (on the 7th of September 1841,) directing it to be sold as such by the commissioner of delinquent and forfeited lands. But I do not see why this should prevent the operation of the act. No sale had yet taken place under the order; no right had been acquired by any other person ; and,the title was still in the commonwealth and fully within the control of the legislature. It was as competent to that body to transfer the title to forfeited land from the commonwealth to a claimant under a distinct grant from her, as well after an order of sale as before, provided it were done before any new right was acquired by an actual sale being made under it. And every reason which could operate with the legislature to induce it to make such a transfer before the land had been directed to be sold, would apply with equal force, though it might have chanced that such an order had been made. The order created no new rights, made no *413 change in the subject, and was but a step in the process of carrying out the purpose of the legislature previously entertained, but which it could, at any before consummated by a sale, alter, modify or revoke at pleasure; and the passage of the act of March 22d, 1842, must be regarded as a revocation of the purpose of the legislature to make sale of the lands intended to be thereby transferred to claimants under other rights, whether they had been ordered by the court to be sold under the provisions of previous laws, or whether it chanced that no step had been taken to bring them before the court with a view to subject them to sale. The terms of the act are sufficiently broad and comprehensive to embrace all lands not actually sold, and I can perceive no reason whatever for restricting their operation to those cases in which no steps had been taken by the commissioners of delinquent and forfeited lands to subject them to sale, or if any, they had not progressed to the point of the rendition of a decree.
But it is supposed that the terms of this act are prospective in their operation, and apply only to lands thereafter to become forfeited. The language used, it is true, is “ that all the right, title and interest which shall be vested in the commonwealth,” &c.; but I think it very clear that it intended to embrace forfeitures theretofore accrued as well as such as might thereafter accrue; and that it should be construed as if it read “ all the right, title and interest which now is or hereafter shall he vested in the commonwealth,” &c. That this is the true construction of the act is, I think, conclusively shown by the fact that in its very terms it applies to forfeitures accruing by reason of the failmre of the owners of “omitted” lands to comply with the provisions of the second section of the act of February 27th, 1835, and the subsequent acts in pari materia, giving further time for the performance of that duty. Now under the provisions of the laws in force at the *414 time of the passage of the act of March 22d, 1842, no forfeitures could thereafter accrue of “ omitted” lands for failure to cause them to he entered and charged with taxes, &c. and to pay such taxes, because by the fifty-second section of the act of February 9th, 1814, 2 Rev. Code 1819, p. 555, all laws whatsoever, declaring lands to be forfeited for failure to enter them on the books of the commissioners of the revenue, were expressly repealed, and all forfeitures of “ omitted” lands for failure so to enter them, were remitted; and no act was again passed to forfeit “ omitted” lands until the act of February 27th, 1835, the second section of which however (that declaring the forfeiture of omitted lands for failure to enter them, &c. as therein provided,) is expressly restricted by the first section of the act of March 23d, 1836, Sess. Acts 1835-6, p. 7, to lands and lots omitted prior to 1831, and declared not to apply to any lands or lots omitted since that year. Nor up to the time of the passage of the act of March 22d, 1842, had there been any other law enacted declaring forfeitures of lands omitted after the year 1831. So that the forfeitures of “ omitted” lands referred to and embraced by the act of March 22d, 1842, must necessarily have been forfeitures which had accrued and been consummated upon the 1st of November 1836, and of which the parties concerned had failed to relieve themselves by complying with the provisions of the law prior to the 1st of July 1838, the ultimate period of redemption which had .been provided. I think therefore that the act of March 22d, 1842, does cover this case, and that the lessor of the plaintiff was in respect of the forfeited Deakins title, fully embraced by its provisions.
The remaining question to be considered is as to the effect of the acknowledgment of tenancy under seal, executed by Wild to Hoye in June 1840, upon the right of the plaintiff to recover in this action. It is *415 suggested that by the execution of that instrument, or by the relation of landlord and tenant which it sets up and recognizes, or by both, Wild is estopped from now questioning Hoye’s title or that of the defendant claiming under him, and that he cannot be permitted to allege his right against it in this action. If this be the effect of that instrument, it will be giving to it a force and meaning never contemplated by the parties at the time of its execution: For I apprehend, that all that was expected or intended to be accomplished by it was to arrest the further running of the statute of limitations, and to convert Wild’s previous adversary possession into the friendly holding of a tenant.
It is admitted that a tenant will not be permitted to dispute his landlord’s title during the continuance of the tenancy or until he shall have restored the possession, or at least (as would seem to be intimated in some of the cases) until he shall have made a formal disclaimer to hold further as tenant with full notice to the landlord that he will claim to hold in adversary possession for the future. But after the term of the tenancy has expired by its own limitation and the possession has been restored to or regained by the landlord, and both parties thus placed in statu quo, there can be no reason why the tenant should be debarred from setting up, in an action brought by himself against the landlord, any title he may have to the premises wholly unaffected by the temporary relation of landlord and tenant which had subsisted between them for a term now past and ended. Nor do I think any authority can be shown supporting such a proposition, while there are many to be found, full and clear to the contrary. Co. Litt. 47 b; England v. Slade, 4 T. R. 682; Jackson v. Davis, 5 Cow. R. 135; Jackson v. McLeod, 12 John. R. 182; Camp v. Camp, 5 Conn. R. 291; Galloway's lessee v. Ogle, 2 Binn. R. 468. And as to the supposed estoppel created by the acknowledg *416 ment under seal of Hoye’s title, that at the utmost could only be held to affect such right and title as Wild had at the time it was executed. It cannot preclude him from setting up a title he may have subsequently acquired. Wynn v. Harman, 5 Gratt. 157. Estoppels are deservedly odious in the law; they frequently conclude a man from alleging the truth and thereby often work injustice, and their operation and effects will not be extended beyond the narrow limits to which they have been properly restricted. At the time cf the execution of this paper, Hoye claimed paramount title to the land under the grant to Deakins in 1785. Wild then had no title because nothing passed under his junior grant which bore date in August 1836. At the date of his patent no forfeiture had taken place under the grant to Deakins; and when he executed the paper in question in 1840, no act of assembly had been passed under which he could claim any benefit from the forfeiture which had taken place under the Deakins grant on the 1st of November 1836. But upon the passage of the act of March 22d, 1842, his condition was, as we have seen, most materially altered and improved. In faet he thereby acquired a new and distinct title, being by the operation of that act, fully invested with the very title which passed by the grant to Deakins. Why then should he be estopped from setting up this subsequently acquired title against the defendant here, or against Hoye himself, or any body else ? If Hoye and the defendant had had title and had actually conveyed the land by formal deed to Wild in 1842, can it be doubted that he might set up the title thus acquired, and recover the land from them upon the strength of it, if they afterwards withheld the possession, without being in the slightest degree embarrassed or impeded by his having executed the acknowledgment of tenancy in 1840 ? I think not; and regarding the transfer of the Deakins title to Wild *417 under the act of March 1842 as being as perfect and complete an investiture of that title in Wild as if instead, it had been conveyed to him by Hoye or the defendant or both of them, (they having title,) by the most formal and solemn deed, I can perceive no reason why the paper of 1840 should, for a single moment, interpose an obstacle in the way of the plaintiff’s recovery by force of the new rights and distinct title thus cast upon him by law. To give this paper the operation and effect contended for would be to make it amount to even more than a solemn deed of conveyance from Wild to Hoye for his whole interest in the premises, with covenants of general warranty; for it would not only divest Wild of all title which he then had,' but would also utterly disable him (so far as Hoye was concerned) from afterwards acquiring any title to the land even from Hoye himself.
With these views, I think that the law arising upon the case agreed was for the plaintiff, and that the Circuit court erred in rendering judgment for the defendant. I am of opinion therefore to reverse the judgment of the Circuit court and to render judgment for the plaintiff.
Daniel and Samuels, Js. concurred in the opinion of Lee, J.
Allen, J. was of opinion that the act of March 22d, 1842, did not apply where there had been a decree of a Circuit court directing a tract of land1, reported as forfeited, to be sold as such.
Moncure, J. was of opinion that Wild was estopped) by the instrument executed by him on the 23d of June-1840, from setting up a claim adverse to Hoye’s- titles
Judgment reversed.