# WHEELING.

KENT'S REPRESENTATIVES *v.* WATSON'S HEIRS, &c.

Submitted January 17, 1883—Decided November 17, 1883.

1. A party enters into a verbal contract for the purchase of land from a commissioner of the court, who is authorized to make a private sale of land subject to the confirmation of the court, and enters upon the land and improves it, but the sale is not reported

71

to the court or any part of the purchase-money paid, and he
then by a written contract, without warranty, sells his claim
and improvement in and upon the land to a third person, stat-
ing therein that the title to the land is outstanding, but makes
no reference to his verbal purchase. More than ten years after
the sale of his claim he buys the same land from the commis-
sioner by a written contract, and thereafter the assignee of the
person to whom he sold his claim purchases from the commis-
sioner a part of said land with full notice of the written contract
of purchase by said party and obtains from the commissioner a
deed for such part, neither of said sales having been confirmed
by the court. HELD:

That the last purchase by said party is valid and he is entitled
to the land as against said assignee of the person to whom
he sold his claim, and his purchase should be confirmed by
the court. (p. 566.)

2. Where a party sells and conveys, without warranty, a particular
claim or title to land, he is not thereby estopped from purchas-
ing a superior adverse or outstanding title and holding the land
under such superior title against the grantee of such particular
claim or title where there was no fraud or concealment in the
sale of said particular claim. An estoppel is never extended
beyond what is called for by the plain import of the terms
employed by the grantor in the conveyance. (p. 568.)

SNYDER, JUDGE, furnishes the following statement of the
case:

James R. Kent and James T. Watson being the owners
of a tract of about eighty thousand acres of land lying prin-
cipally in Mercer county, Virginia, now West Virginia, sev-
eral parcels of which had been sold but not conveyed by one
Andrew Johnston as attorney in fact for the owners, and
the said Watson, after said sales, having died intestate, with-
out children, and his estate having descended to his collat-
eral kindred scattered over several States of the Union and
many of them unknown, so that it was almost impossible to
carry out the contracts of sales already made or to dispose
of the remainder of said lands; in order, therefore, to obvi-
ate these difficulties, the General Assembly of Virginia, by
an act passed February 15, 1844, authorized a suit to be
brought in the circuit superior court for Mercer county in
the names of James R. Kent and James Watson Williams
as administrator of James T. Watson, deceased, against
James T. Watson's heirs and others, for the purpose and

with authority to appoint commissioners to sell and convey the said lands under the orders of the court, and to collect the purchase-money and pay over the same to the parties entitled thereto as the court might from time to time direct. Acts 1843–4, ch. 135, p. 106.

Pursuant to said act, this suit was instituted in said court and by a decree entered therein on May 4, 1848, one Robert Hall was duly appointed a commissioner to collect the purchase-money for the lands theretofore sold and to make sales of the residue of said tract of eighty thousand acres at such times, in such parcels and upon such terms as to him may seem best to enhance the sale, subject, however, to the confirmation and approval of the court, with authority to him to make deeds to the several purchasers as the sales should be confirmed and the purchase-money paid, conveying to the purchasers all the right, title and interest of the said James R. Kent and the heirs of the said James T. Watson in and to the parcels of land so purchased and paid for in full, and ordering the said commissioner to take from the purchaser in every case bond with good security payable to him as such commissioner, and requiring him to give bond and report his proceedings to court at each succeeding term thereof. The said Hall gave bond as commissioner and entered upon the duties of his office. On May 4, 1867, a decree was entered in the cause appointing one Wallace J. Comer a joint commissioner with said Hall and he also gave bond as such and entered upon the duties of his office as such joint commissioner. On April 20, 1868, William St. Clair purchased from said Robert Hall and Wallace J. Comer, commissioners as aforesaid, two hundred and twenty acres of land at the price of seventy-five cents per acre, making one hundred and sixty-five dollars, to be paid in three equal annual payments. The said commissioners had said land surveyed and executed to said St. Clair their written contract therefor, binding themselves to convey the same to him by deed with special warranty retaining a vendor's lien, and he at the same time executed to them his bonds for the purchase-money. Afterwards the court, by its decree of December 9, 1868, removed said Wallace J. Comer as commissioner and appointed in his place one Andrew White who gave bond as such

commissioner and thereafter acted as such. The said Hall and Comer, as commissioners, having sometime prior to September 30, 1874, sold to Thomas Ladd thirty-three acres and the said Andrew White having, also, as commissioner sold to said Ladd ninety-two acres of said lands, making together one hundred and twenty-five acres, the said White as commissioner, by deed, dated on the said 30th day of September, 1874, conveyed to said Ladd all the title and claim of the heirs of James R. Kent and James T. Watson in and to said one hundred and twenty-five acres of land, or of any person claiming under or through them, which deed was duly acknowledged by said White and recorded in Mercer county on October 15, 1874.

At the April rules, 1877, the said William St. Clair filed his petition in said suit against said Thomas Ladd, stating therein, that sometime prior to the late war he made a verbal contract with said commissioner, Hall, for the purchase of a tract of about two hundred and twenty acres of said eighty thousand acre survey; that said Hall put him in possession thereof and he made valuable improvements thereon by clearing and fencing parts thereof and placing buildings thereon; that he was to pay seventy-five cents per acre for same in three annual payments from the time said land was run off by actual survey which was to be done by said Hall in a short time, and then a title-bond was to be executed to him and his bonds given for the purchase-money; that said Hall neglected to have said land surveyed, and the war came on soon after and nothing further was done; that in 1868, the aforesaid commissioners, Hall and Comer, had said land run off and gave him the title-bond for two hundred and twenty acres, dated April 20, 1868, hereinbefore mentioned; that afterwards, Commissioners Comer and White sold at different times the most valuable part of said two hundred and twenty acres to Thomas Ladd and said Ladd is now in possession thereof. He, therefore, prays that said Ladd may be made a party to his petition, the sale of said two hundred and twenty acres of land to him confirmed by the court and a conveyance made to him according to his contract of purchase, and that he may have general relief.

At the same rules Thomas Ladd appeared and filed his

demurrer and answer to said petition. In his answer he denies that he had purchased of said commissioners any land that had been sold by any one authorized to sell the same to the plaintiff previous to the sale to him. He admits that previous to the war the petitioner, St. Clair, had made a contract for the purchase of land from Commissioner Hall as stated in his petition, and that petitioner was placed in possession and made improvements thereon, but that after said sale and after said improvements were made, petitioner sold his entire claim and interest therein to one Charles Clark as appears from his written contract, dated August 14, 1856, filed herewith, and that, subsequently, the said Clark sold said claim to respondent; that petitioner gave the possession of said land to said Clark and said Clark to respondent; that no part of the purchase-money for said land having been paid to said commissioner, respondent some time after the war applied to Commissioner Andrew White for a deed for said land, he offering to pay the purchase-money due therefor; that said White then surveyed for him ninety-two acres of said land—Commissioner Comer having previously surveyed for him thirty-three acres—and he thereupon paid said Commissioner White eighty dollars for said one hundred and twenty-five acres, and subsequently by deed, dated September 30, 1874, said Commissioner White conveyed to him said one hundred and twenty-five acres of land. Respondent then prays for affirmative relief and says, that by reason of the sale by St. Clair to Clark and by Clark to him he is entitled as against said St. Clair to the whole of said two hundred and twenty acres, but if not, he is at all events entitled to the one hundred and twenty-five acres conveyed to him by Commissioner White for which he had paid and has had the possession of for a long time and placed thereon valuable improvements.

On October 28, 1878, a decree was entered setting aside the deed from commissioner White to Thomas Ladd, dated September 30, 1874, as having been prematurely and improperly made and ordering a deed to be made to said Ladd for the whole of the two hundred and twenty acres described in the contract, dated April 20, 1868, from commissioners Hall and Comer to Thomas St. Clair upon the payment by

Ladd of the purchase-money therein specified, subject to a credit for the eighty dollars paid by said Ladd for the one hundred and twenty-five acres which had been conveyed to him; and the cause was then referred to a commissioner to ascertain what, if anything, St. Clair was entitled on account of permanent improvements put by him on the said land. And, on May 30, 1879, a decree was entered disallowing any compensation to St. Clair for improvements and dismissing his petition without costs. From this and the aforesaid decree of October 28, 1878, an appeal and *supersedeas* was allowed by a judge of this Court, on the petition of said William St. Clair.

*Alexander Mahood* for appellant.

*R. C. McClaugherty* for appellee.

SNYDER, JUDGE:

Before the appellee, Thomas Ladd, made his purchase from the commissioners, Comer and White, of any part of the land in controversy, the appellant, St. Clair, had entered into a valid written contract with commissioners Hall and Comer, by which the equitable title to the two hundred and twenty acres claimed by him had been conferred upon him and he had executed his bonds for the land and was in possession and residing upon it. This purchase was made in strict conformity with the directions of the court and the authority conferred by its decrees upon the commissioners, and if applied to it would have been its duty to have confirmed said sale and ordered a conveyance to be made to St. Clair according to his contract of purchase, unless, for reasons *dehors* said contract, said sale should have been disaffirmed. Were there any such reasons?

The proof is abundant to show that before and at the time of his alleged purchase, Ladd had full notice of the prior purchase and contract of sale to St. Clair. That he knew this when the land was surveyed to him, and he also knew that his said purchase included a part of the land previously sold to St. Clair. This, however, is not seriously controverted by Ladd. He admits the prior purchase by St.

Clair and also that he had notice of that purchase at the time and before he made his purchase of the commissioners, Comer and White. He founds his claim to the land upon the alleged purchase by Clark from St. Clair and his purchase from Clark. He claims that St. Clair, by his contract made in 1856, with Clark, relinquished all right that he then had or might thereafter accrue to him to said Clark and that he was estopped thereby from subsequently sitting upon any claim or acquiring any right as against Clark and his assignee to any part of said two hundred and twenty acres of land. The said contract with Clark as it appears in the record is as follows:

"Know all men by theses presents, That I, William St. Clair, of the county of Mercer and State of Virginia, have this day bargained and sold, and by these presents do bargain and sell unto Charles Clark all my claim and improvement in and to the land on which I now reside, which is situate in the county and State aforesaid, together with all the growing crop on said land, which consists of tobacco and corn, for the sum of one hundred dollars in hand paid by the said Charles Clark, for which I now relinquish and give to said Clark all the right that might in any way accrue to me under said improvement on said land, the title to the same being in James R. Kent and the heirs of James T. Watson, deceased, as witness my hand and seal this 14th day of August, 1856.

his
"W M. ☒ ST. CLAIR.    [SEAL.]"
mark.

This is evidently not a sale of the land or any title thereto. The most that can be inferred from it would be an authority to Clark to purchase the said land from any one having the right to sell it. There is no designation of any quantity of land. No boundaries are given or general description by which the land could be located or identified. No assertion of title or agreement for any conveyance is made; nor is there any assurance or warranty of any claim or title to any part of the land; but, on the contrary, it is expressly stated that the title is in James R. Kent and the heirs of James T. Watson, deceased. It is apparent from the whole tenor and language of this contract that it was intended to and did in fact

transfer to Clark only the use of St. Clair's improvement and the growing crop thereon, and the said St. Clair relinquished "to the said Clark all right that might accrue to him in any way *under said improvement* on said land." It was a mere sale of the growing crops and the improvement subject to the right of the owners, Kent and Watson's heirs, to sell or otherwise dispose of it to whomsoever and whenever they chose to do so. But suppose that St. Clair did by said contract attempt to sell the land to Clark, such attempt would have been futile and could have conferred no right or title thereto to Clark for the reason that St. Clair had no title or interest therein which he could confer on any one. He had a verbal contract with a commissioner of the court for the purchase of the land and had taken possession, but the boundaries had never been defined and he had not paid a dime of the purchase-money. Such a contract could not have been specifically enforced in a court of equity, even if it had been with a private person acting for himself and much less could be enforced against a commissioner acting under the decrees of a court and subject to its approval.—*Mathews* v. *Jarrett*, 20 W. Va. 415. But even, if it be assumed against what has already been said, that St. Clair did at the date of his contract, in 1856, have a claim of some character to said land which he could sell and that he did by said contract sell said claim to Clark, still he would not be estopped thereby from purchasing a superior adverse or outstanding title and setting up the same against his vendee or the assignee of his vendee. Such sale would be construed to operate simply as a transfer and relinquishment of the particular claim or title owned or asserted by him at that time. There being no warranty or assurance of title to the land in him mentioned in his contract; but on the contrary, an express statement that the title was in Kent and Watson's heirs, there is nothing for an estoppel to operate upon. An estoppel is never extended beyond what is called for by the plain import of the terms employed by the grantor in a conveyance of any kind. In the absence of a warranty, there is nothing in the nature of the instrument used justifying the grantee in claiming under it anything further than the specific title or claim which it purports to convey. The day after the sale by St.

Clair to Clark, the owners of the land, Kent and Watson's heirs, could have taken possession of it and sold a valid title to any one they desired, and Clark by the terms of his contract, or otherwise, would have had no recourse upon or claim against St. Clair on account of the eviction. There was nothing in the contract which could have estopped even St. Clair from thereafter acquiring the true title from the owners.— *Wynn* v. *Harman*, 5 Gratt. 157.

But, if it can be inferred, for it is certainly not expressed, that St. Clair yielded any right to purchase the land, which it was supposed he then had, to Clark, he certainly did nothing more by said contract, and said Clark having failed entirely to purchase the land, St. Clair was at liberty to purchase. The claim that Ladd purchased as assignee of Clark and intended thereby to avail himself of and carry into effect the verbal contract of purchase made by St. Clair prior to 1856, is obviously a mere pretense and afterthought; for his purchase from commissioners Comer and White had no reference to said verbal contract as appears from the character of his purchase. He first purchased of Comer only thirty-three acres and then afterwards from White ninety-two acres more, making one hundred and twenty-five acres. This was all he ever purchased or contracted to purchase. How this could be construed to be a purchase of two hundred and twenty acres, the quantity embraced in said verbal contract, is beyond my comprehension.

In any aspect of the case, therefore, it does not seem to me that Ladd acquired any title to any part of the two hundred and twenty acres sold to St. Clair by commissioners Hall and Comer, and described in the written contract from them to him dated April 20, 1868.

For the reasons aforesaid, I am of opinion that the said decrees of October 28, 1878, and of May 30, 1879, should be reversed, except so much of the former as sets aside and annuls the deed, dated September 30, 1874, from commissioner White to Thomas Ladd which is affirmed, with costs to the appellant against the appellee, Thomas Ladd. And this cause is remanded to the said circuit court of Mercer county with directions to confirm the sale of the said two hundred and twenty acres sold to the appellant, St. Clair,

by commissioners Hall and Comer, by said contract of April 20, 1868, and have the same conveyed to him by a commissioner upon the payment of the purchase-money in said contract specified, and for further proceedings to be had therein according to the principles declared in this opinion.

THE OTHER JUDGES CONCURRED.

REVERSED IN PART, AFFIRMED IN PART.    REMANDED.

---

# WHEELING.

