## CHARLESTON.

McCLAUGHERTY *v.* COOPER.

Submitted January 18, 1894.—Decided April 4, 1894.

1. CRIMINAL JURISDICTION AND PROCEEDINGS—PERJURY—EVIDENCE.

   In all cases other than a criminal trial for perjury it is only necessary to introduce in evidence such parts of the record of another proceeding as relate to the matters in issue. Section 4, c. 158, of the Code requires the consent of the accused, before a part only of such record may be given in evidence in a criminal prosecution for perjury.

2. CRIMINAL JURISDICTION AND PROCEEDINGS—SLANDER.

   In actions of defamation it is not necessary that a plea of justification should contain an allegation, that the slanderous words were spoken or uttered "with good motives and for justifiable ends."

3. CRIMINAL JURISDICTION AND PROCEEDINGS—PERJURY.

   A plea justifying a charge of perjury must allege, that the matter or thing, about which the false words were spoken, was material to the issue ; otherwise it is bad.

4. CRIMINAL JURISDICTION AND PROCEEDINGS.

   Whether a matter is material to the issue depends on the question whether its truth or falseness would affect the issue ; and, if the truth or falseness would not affect the issue, the matter is not material.

5. CRIMINAL JURISDICTION AND PROCEEDINGS—PERJURY.

   To sustain a plea justifying the charge of perjury, defendant must prove, (1) that the evidence was false ; (2) that it was about a matter or thing material to the investigation ; (3) that it was willful or corruptly, knowingly and intentionally given contrary to the truth.

II. G. WOODS and E. P. RUCKER, for plaintiff in error, cited Town. Slander, § 404 ; 30 Mo. 575 ; 73 Mich. 445 ; 2 Smith L. C. (8th Ed) 996 ; 92 Am. Dec. 408 ; 58 Am. Dec. 706 ; 32 Am. Dec. 40.

DENT, JUDGE :

W. W. McClaugherty, plaintiff, at February rules, 1890, instituted an action for defamation against William A.

Cooper, defendant, in the Circuit Court of Mercer county. The declaration contained three counts. On the 22d of March, 1890, the defendant appeared and demurred to the declaration and each count thereof. The demurrer was overruled as to the first and second counts and sustained as to the third count. The defendant then moved the court to strike out the first two counts, which motion was also overruled. The plea of not guilty was entered. Afterwards, on the 25th of June, 1890, the defendant tendered two special pleas in writing, to which the plaintiff demurred. The court sustained the demurrer to the first plea, but overruled it as to the second; to which plaintiff replied generally; a trial of the case on the issues joined resulted in favor of the defendant.

The plaintiff on a writ of error to this Court relies on the following assignment of errors, to wit: (1) The verdict of the jury should have been set aside, because it was not warranted by the evidence in the case; (2) the court erred in allowing defendant to file his special plea No. 2, and in overruling the demurrer to said special plea; (3) the court erred in admitting a part of the record in the case of *Halstead* v. *Cooper* without admitting the entire records.

The last assignment of error is without foundation, as it is the settled law of this state, that it is not necessary to introduce the whole of the record of another case in evidence but only such parts of it, as relate to the matters in issue, except in a criminal trial for perjury. On this point, see *Dickinson* v. *Railroad Co.*, 7 W. Va. 413; *Wynn* v. *Harman*, 5 Gratt. 157; *White* v. *Clay*, 7 Leigh, 68, 78, 82.

As to the second assignment of error in holding the special plea good the counsel allege in its support, that the plea fails to show that the charges were made "with good motives and justifiable ends," contrary to section 8, Art. III, of the Constitution, which is in these words, to wit: "(8) In prosecutions and civil suits for libel the truth may be given in evidence; and if it shall appear to the jury that the matter charged as libelous is true and was published with good motives and for justifiable ends, the verdict shall be for the defendant."

The wording of this section confines it strictly to actions

for libel and does not permit it to be so construed as to include actions for defamation or verbal slander. Section 47, c. 130, of the Code in these words, to wit: "In any action for defamation the defendant may justify by alleging and proving that the words spoken or written were true"—applies to actions for defamation and does not require, that the defendant should either allege or prove, that the slanderous words were spoken "with good motives and for justifiable ends." The plea is not therefore bad in this particular.

It remains for us to inquire whether it is a good plea in other respects. Under the pleadings as now presented this must be treated as a common-law action for defamation in charging the plaintiff with having been guilty of the crime of perjury. The plea seeks to justify the charge and alleges that the plaintiff was guilty of willful and corrupt perjury. It is in words as follows, to wit (after styling the case):

"The said defendant William A. Cooper, for further plea in this behalf, says that the said plaintiff his aforesaid action against him ought not to have and maintain, because he says that before the speaking and publishing of the said words of and concerning the said plaintiff in the declaration mentioned, which words in the first and second counts are: 'I (meaning the defendant) can tell the truth, and swear it, too; but some people (meaning the plaintiff) can tell and swear lies.' 'You infernal rascal (speaking to and of the plaintiff) you swore a lie against me (meaning the defendant) the other day in my trial at Princeton.' 'That infernal rascal (speaking of and meaning the plaintiff) swore a lie against me (meaning the defendant) the other day in my trial at Princeton.' 'You (speaking to and meaning the plaintiff) swore a lie against me (meaning the defendant) the other day at Princeton.' 'You (speaking to and meaning the plaintiff) swore a lie against me (meaning the defendant) the other day'—to wit, on the——day of October, 1889, before the County Court of Mercer county, W. Va., in a certain action and proceeding then pending before the said County Court in the matter of charge preferred and filed by one A. T. Halstead against the said William A. Cooper for the removal of the said Cooper from the office

of justice of the peace for the magisterial district of Beaver Pond in said county, which proceeding came on to be tried in due form of law by the said court, and which proceeding the said County Court has jurisdiction to try and determine, the said plaintiff, W. W. McClaugherty, upon the trial of said proceeding, appeared as a witness on behalf of said A. T. Halstead, the plaintiff or prosecutor therein, and was then and there in open court, at the County Court held as aforesaid, on the day aforesaid, before S. P. Pearis, clerk of the said court, duly sworn, and took his corporeal oath to speak the truth, the whole truth, and nothing but the truth, touching and concerning the matters in question in the said action or proceeding, the said S. P. Pearis, clerk of the said court, then and there having sufficient and competent power and authority to administer the said oath to the said plaintiff in that behalf. And the said plaintiff, W. W. McClaugherty, upon the said trial of the said action or proceeding, in his evidence given therein did willfully, corruptly, and falsely testify and say that he (the said plaintiff) was upon the porch of Thomas Bros. & Co., in the town of Bluefield, or the 'city of Bluefield,' in said county, on the day upon which one Sam Gardner was hanged, and that he (the said plaintiff) while upon the said porch on the day last aforesaid, saw the said defendant, W. A. Cooper, leave his office in said town, pass around the corner of the building of said Cooper next to the store of Moses Henry, and go down to the Altamont House, in said town, bareheaded, or without his hat. And the said defendant says that the said evidence so given by the said plaintiff was material to the issue then being tried by the said County Court, as aforesaid; that the said plaintiff did not and could not have seen the said defendant leave his office and go down to said Altamont House, as aforesaid, for the reason that the view of the route over which the said defendant passed between the said office and the said Altamont House was totally shut off and obstructed from the place where the said plaintiff was at the time as stated by him, to wit, the said store house of the said Thomas Bros. & Co., all of which the plaintiff well knew. And the said defendant says that the said plaintiff did willfully and

corruptly make the statement and give the evidence aforesaid at the time and place aforesaid, knowing the same to be false, and did thereby commit willful and corrupt perjury. And the said defendant says that the said plaintiff, having willfully and corruptly sworn falsely against him, as aforesaid, therefore the said plaintiff is an 'infernal rascal.' Wherefore the said defendant, at the said several times in the said first and second counts mentioned, spoke and published of and concerning the said plaintiff the said several words in the said counts mentioned to have been spoken and published by the said defendants, as it was lawful for him to do for the cause aforesaid, all of which the said defendant is ready to verify.

"Douglass & McNutt, p. d."

This plea is bad for want of certainty. It must show distinctly that the matter or thing about which plaintiff is alleged to have testified falsely was material to the issue. The plea alleges "that the said evidence so given by the said plaintiff was material to the issue." What part of the evidence was material to the issue? That W. A. Cooper left his office in said town, and passed around the corner of the building of said Cooper next to the store of Moses Henry and went down to the Altamont House in said town, bareheaded or without his hat? Or that plaintiff was on the porch of Thomas Bros. & Co.? Or what plaintiff saw or could see? Now, one of these matters might be material to the issue, and the other not. Which, then, was the matter material to the issue? The plea fails to disclose. Afterwards the plea alleges, that the perjury consisted in plaintiff's swearing, that he saw what he could not see, and there is no allegation that what plaintiff said he saw did not actually happen just the way he stated it. The plea must be framed in such manner as to show, that plaintiff in testifying as he did was guilty of perjury. The statute defining perjury is in these words : "If a person to whom an oath is lawfully administered on any occasion, shall on such occasion willfully swear falsely touching any material matter or thing he shall be guilty of perjury." Code, c. 147, s. 1. It not appearing from the plea, that the fact, to which plaintiff testified, that he saw what he could not see, was material

to the issue, the plea was bad and should not have been filed.

Admitting the plea, however, to be good, is it sustained by the evidence? This brings us to a consideration of the first assignment of error, to wit, the refusal of the court to set aside the verdict as contrary to the evidence. Under his plea, the defendant was bound to prove technical perjury, to. wit; that plaintiff "willfully swore false touching a material matter or thing.". (*Hicks* v. *Rising*, 24 Ill. 566; *McKinly* v. *Rob*, 20 Johns. 351); not beyond all reasonable doubt, but by a preponderance of testimony (Newell, Defam. 795; *Spruil* v. *Cooper*, 16 Ala. 791; *Kincade* v. *Bradshaw*, 3 Hawks. 63). The defendant's evidence taken most strongly against plaintiff shows that plaintiff testified, that he stood on the porch of Thomas Bros. & Co., in the town of Blue-field, in said county, on the day upon which one Sam Gardner was hanged, and from there he saw the defendant, W. A. Cooper, leave his office in said town, pass around the corner of the building of said Cooper next the store of Moses Henry and go down to the Altamont House in said town bareheaded or without his hat; and that it was a matter of impossibility for a person ' standing on said porch, owing to physical obstruction, to see defendant leave his office and pass around the building and go down to the Altamont House. Defendant admits that he did do so. There is no evidence in this case to show that what plaintiff saw was a matter of inquiry, but what the defendant did was the material inquiry; and it is admitted to have occurred just as plaintiff said it did, although by inadvertence on his part, he led the defendant's witnesses to believe, that, when he saw the defendant's conduct, he was standing on said porch. This was wholly immaterial matter as to the issue then under investigation, and the witness's attention was not specially called to it, and as soon as it was, he attempted to correct it, not on the theory that he had made the mistake, but that those who heard him testify had misunderstood his testimony. Such evidence as this is not sufficient to sustain a plea of justification charging perjury, either as to materiality or willfulness. *Chandler* v. *Robison*, 7 Ired. 480; *Tull* v. *David*, 27 Ind. 377.

In the first case cited the court says: "The court was

required to instruct the jury that the testimony of the witnesses, if believed, showed the plaintiff had taken a false oath. This was not the charge made by the defendant against the plaintiff, but it was one of perjury. It was not sufficient, therefore, to the defendant's justification that he should show that the oath was false, but he must go further, and show that it was corruptly false. If this were not so, the condition of a witness would be truly perilous; the ignorant and the innocent would occupy the same ground with the corrupt. The most intelligent and upright are liable to be mistaken. It is not the falseness of the oath, alone, that constitutes the crime of perjury, but it is the corruptness of the heart in taking it."

In the second case, it is held: "Where, in an action for slanderous words imputing the crime of perjury, the defendant justifies the speaking of the words, he must prove, not only the falsity of the affidavit or evidence, but that the statements were made willfully, corruptly and against the better knowledge of the witness. * * * In order to sustain his justification, the defendant must prove beyond a reasonable doubt that the plaintiff willfully and corruptly swore to that which is false."

As heretofore shown, the later and better authority is to the effect that it is not necessary to establish the perjury beyond all reasonable doubt, as in a criminal trial, but the perjury must be shown to have been conclusively committed by at least a preponderance of testimony. Newell, Defam. 795. That is, every element of the perjury must be so proven, to wit: (1) That the evidence was false; (2) that it was material to the issue; (3) that it was willful, or corruptly, knowingly and intentionally given contrary to the truth. If the defendant fails to establish any one of these elements, his plea is unsustained, and the jury should find for the plaintiff on the issue.

So far as a careful examination can ascertain, the testimony in this case utterly fails to establish the truth of the justification, and the court, jury and counsel appear to have acted under a serious misapprehension of the law. To charge a person with being guilty of perjury is a serious matter. The best of men are liable to make mistakes in

giving in evidence, especially about immaterial inquiries, either through inadvertence, inattention or lack of consideration. And if such mistakes are allowed to become the foundation for destroying the reputation of a sincere witness, testifying under the court's process and protection, judical investigations will be greatly hindered, and justice oftentimes defeated.

For the foregoing reasons, the judgment of the Circuit Court is reversed, the verdict of the jury is set aside, and this cause is remanded to the Circuit Court for further proceedings to be had therein in accordance with this opinion and the law governing such cases.