# CHARLESTON.

## AMOS v. STOCKERT.

### Submitted Jan. 14, 1899—Decided Nov. 28, 1899.

1.  PLEADING AND PRACTICE—*Rejection of Plea.*
    If the court make an order rejecting the plea, it may, in its discretion, at a subsequent term allow the same plea filed, when it appears that it had been improperly rejected, imposing such conditions upon the moving party as to costs or continuance of the case as may seem just.   (p. 119).

2.  DEFAMATION—*Justification—Pleading.*
    In an action for defamation, if the defendant would rely on the truth of the matter declared on, he must plead it specially, or he can not give it in evidence at the trial, even in mitigation of damages.   (p. 119).

3.  DEFAMATION—*Justification.*
    When a defamatory charge is made in general terms, it can only be justified by specification of the facts which are relied on to establish its truth.   (p. 121).

47  109
50  319

47  109
51  479
e 51 5(.3

47  109
56  189

47  109
58  551

47  109
63  417

47   109
f64  223

4.  .HARMLESS ERROR—*Defamation—Plea of Justification.*
    In an action for defamation, where a special plea of justi-
    fication is permitted to be filed, which undertakes to justify
    all the charges in the declaration, but is insufficient in its
    specifications as to any of them, and other special pleas are
    filed, justifying, by proper specifications, certain of the
    charges, and on the trial it appeared that the defendant of-
    fered no evidence to the jury to prove the truth of any of the
    charges not specifically justified in such other pleas, the ap-
    pellate court will regard the filing of said insufficient plea
    as harmless error.     (p. 121).

5.  CONTINUANCE—*Discretion of Court.*
    The question of continuance is one addressed to the sound
    discretion of the court, and, unless it is plainly apparent that
    such discretion has been abused, this Court will not inter-
    fere therewith.   (p. 125).

Error to circuit court, Upshur County.

Action by H. B. B. Amos against G. F. Stockert. Judg-
ment for defendant, and plaintiff brings error.

*Affirmed.*

W. W. BRANNON, and J. C. McWHORTER, for plaintiff in
error.

A. M. POUNDSTONE, W. B. McGARY, and U. G. YOUNG,
for defendant in error.

McWHORTER, JUDGE:

H. B. B. Amos brought his action of trespass on the case
in the circuit court of Upshur County against G. F. Stock-
ert, and filed his declaration, as follows:   "H. B. B. Amos
complains of G. F. Stockert of a plea of trespass on the
case for this, to wit:   That, whereas, the plaintiff is now,
and has been continually for a great number of years, a
minister of the gospel, depending wholly upon his work as
such minister for the support of himself and his family, is
a good, true, just and honest citizen of this state, and as
such hath always behaved and demeaned himself, and until
the committing of the grievances by said defendant, as
hereinafter mentioned, was always reputed, esteemed, and
accepted by and amongst all of his neighbors, and other
good and worthy citizens of this state to whom he was
known, to be a person of good name, fame, and credit,

whereby the plaintiff, before the committing of the several grievances by the said defendant, as hereinafter mentioned, was recognized and esteemed as being a minister of good moral character, as a person who was virtuous, upright, honest, and faithful in the discharge of his duties as a citizen and as a minister of the gospel as aforesaid, and has deservedly obtained the confidence and good opinion of all his neighbors, and of other good and worthy citizens of this state to whom he was known, both as a minister of the gospel, as aforesaid, and as a citizen of this state. And the plaintiff says that the said defendant, well knowing the premises, but contriving and wickedly and maliciously intending to insult the plaintiff, did, on the — day of ——, 1895, in the presence of L. A. Simons and other good and worthy citizens of this state, then and there, in the presence and hearing of the said last-mentioned citizens, falsely and maliciously, and with intention to insult the plaintiff, speak and publish of and concerning the plaintiff the false, scandalous, malicious, defamatory, and insulting words following, which the plaintiff avers to be, from their usual construction and common acceptation, construed as insults, and tend to violence and breach of the peace; that is to say: 'The Reverend Amos (meaning the plaintiff) has been twice egged out of his own county. I know this is a fact, and can prove it.' 'He (meaning the plaintiff) parted a man and his wife, and ran off with the man's wife, leaving his own wife and children.' 'Parties (naming them) told me that he (meaning the plaintiff) would have better clothes, and would appear more decent, if he (meaning the plaintiff) would not spend his time running after so many dirty bitches, and spend his money riding on the train with them.' Also, on the —— day of ——, 1895, in the presence of Frederick Cutright and other good and worthy citizens of this state, the said defendant, with a like intent upon his part, uttered and published the following false statements of and concerning the plaintiff; that is to say: 'I have been in Lewis county, near the work of Reverend H. B. B. Amos (meaning the plaintiff), and people told me there that he was a man of very bad character; that he spent his money running after women of bad character, and paying their fare on the train.' 'Amos (meaning the

plaintiff) can stand in the pulpit and preach a lie with more grace than any man I ever heard preach.' Also, on the ——— day of ———, 1895, in the presence of J. W. Simons, and other good and worthy citizens of this state, the said defendant, with like malicious intent upon his part to slander and injure the plaintiff, did utter and publish the following false and scandalous, malicious, defamatory, and insulting words of and concerning the plaintiff; that is to say: 'If the Camp boys catch H. B. B, Amos (meaning the plaintiff) out, it will be worse for him than the egging he got in Braxton county.' 'He, (meaning the plaintiff) has been running over his circuit with other women, spending his money, leaving his family to make a living for themselves.' He (meaning the plaintiff) treats his family worse than a dog when he is at home.' The plaintiff avers that all the foregoing words, statements, and utterances made and published by the defendant of and concerning the plaintiff in the presence and hearing of the various parties herein mentioned, together with many other words, statements, and utterances of like meaning, character, and import, uttered and published of and concerning the plaintiff in the presence and hearing of many other good and worthy citizens of this state, were so uttered and published by the defendant falsely and maliciously, and with intent to insult the plaintiff; which said words, statements, and utterances the plaintiff avers are false, scandalous, malicious, defamatory, and insulting, and, from their usual construction and common acceptation, are construed as insults, and tend to violence and breach of the peace. By means of which said premises to the plaintiff has been greatly injured in his good name, fame, and credit, and has been especially injured in his profession as a minister of the gospel, as aforesaid, and otherwise greatly injured and damnified, to the damage of the plaintiff five thousand dollars ($5,000). And therefore he sues.

On the 8th day of October, 1895, the judge of the court being so situated as to the case that he could not properly try it, Hon. John Brannon was duly elected to hear and determine it, and took the oath prescribed by law for such special judge. On the 9th of October the defendant pleaded not guilty, and issue was joined thereon, and de-

fendant tendered three special pleas in writing, numbered 1, 2, and 3, respectively, and asked leave to file the same, to which filing the plaintiff objected, which objection was sustained by the court, and the pleas rejected, to which ruling the defendant excepted, and the cause was continued on motion of the plaintiff.  On the 10th of February, 1896, Special Judge Brannon tendered his oral resignation as such, which was accepted by the court, and on the 11th of February, 1896, Hon. C. C. Higginbotham was elected and qualified as such special judge to try the case, and the defendant, by leave of the court, filed his plea No. 4, of the statue of limitations, to which the plaintiff replied generally, and issue was thereon joined.  A jury was then duly impaneled and sworn to try the issues joined, and a true verdict give according to the evidence, and the jury were adjourned and the trial continued until next morning. The defendant tendered his three special pleas numbered 1, 2, and 3, and asked leave to file the same, and the plaintiff objected to such filing, but the court overruled the objection, and allowed them to be filed, and plaintiff to each of said pleas replied generally, and issue thereon joined, and the evidence was partly taken, and the jury adjourned until next morning.  On the 13th day of February the jury and the parties again appeared, and "the defendant moved the court to set aside the order entered herein on the 11th day of February, 1896, commencing on page 357, commencing in the words following:  'This day came the parties by their attorneys,' and ending with these words, 'Continued until tomorrow morning at 8 o'clock.'  It was ordered that same be, and the same is hereby, set aside, and the trial was again proceeded with," etc.  The trial continued from day to day until the 19th of February, when the jury returned a verdict for the defendant.

On the 21st of February "the plaintiff moved the court to set aside the verdict of the jury and grant him a new trial on the following grounds:  First, because the court erred in allowing the defendant to file his three pleas Nos. 1, 2, and 3, they having been once tendered, and rejected by the court; second, because the court erred in overruling the motion of the plaintiff for a continuance of this cause at the costs of the defendant upon the filing of said pleas in

open court, and forcing plaintiff to go to trial or take a general continuance; third, because the verdict is contrary to law and the evidence; fourth, because the said verdict is manifestly contrary to the instructions given by the court to the said jury; and, fifth, for various other errors appearing upon the record in this cause,—and said motion, being argued by counsel and maturely considered by the court, is overruled. And to the opinion of the court in so overruling his said motion for a new trial the plaintiff excepted," and the court entered judgment on said verdict.

Plaintiff filed his bill of exceptions, duly signed, and made a part of the record, which bill of exceptions sets out the said three pleas *in entenso*, and designates them as being the same pleas which were tendered and rejected by the court at the October term, 1895:

"Plea No. 1. And said defendant, for further plea in this behalf, says that the plaintiff ought not to have or maintain his aforesaid action thereof against him, because he says, as to the speaking of the words in the plaintiff's declaration set forth and contained, said plaintiff, before publishing and speaking of said several words of and concerning said plaintiff, as in said declaration mentioned, had been twice egged out of his own county, and said plaintiff had parted a man and his wife, leaving his own wife and children, and parties had told the defendant that he (the plaintiff) would have better clothes, and would appear more decent, if he had not spent his time running after so many dirty bitches, and spent his money riding on the train with them; and defendant alleges that what was told him as aforesaid is true. And defendant further says that, before the speaking and publishing of the said several words of and concerning the plaintiff as in said declaration mentioned, said defendant had been in Lewis county, near the work of said plaintiff, and people had told defendant there that said plaintiff was a man of very bad character, and he (said plaintiff) had spent his money running after women of bad character, and had paid their fare on the train; and defendant alleges that what was told him as last aforesaid is true. And defendant further says that, before the speaking and publishing of said several words of and concerning said plaintiff as in said declaration mentioned, said plain-

tiff has stood in the pulpit, and preached and spoke a lie
with more grace than any man defendant had ever heard
preach.   And defendant further says, before the speaking
and publishing of said several words of and concerning
said plaintiff as in said declaration mentioned, defendant
did say, if the Camp boys had caught said plaintiff out, it
would have been worse for him than the egging he got in
Braxton county; that said plaintiff had been egged in
Braxton county; that said plaintiff had been running over
his circuit with other women;   that said plaintiff had been
spending his money, leaving his family to make their living
for themselves; that said plaintiff had treated his family
worse than a dog when he was at home.   Wherefore said
defendant did speak and publish said words of and con-
cerning said plaintiff as in said declaration as he lawfully
might for the cause aforesaid, and this said defendant is
ready to verify; wherefore said defendant prays judgment
if said plaintiff ought to have and maintain his aforesaid
action thereof against him.

"Plea No. 2.   And said defendant, for further plea in this
behalf, says that the plaintiff ought not to have and main-
tain his aforesaid action thereof against him, because he
says, as to the speaking of the alleged words to plaintiff's
declaration set forth and contained, as follows:   "The
Reverend Amos has been twice egged out of his own
county.'  'I know this is a fact, and can prove it.'  'He
parted a man and his wife, leaving his own wife and chil-
dren.'  'Parties told me that he would have better clothes,
and would appear more decent, if he would not spend his
time running after so many dirty bitches, and spend his
time riding on the train with them,'—which are alleged to
have been spoken in the presence of L. A. Simons and oth-
ers, to wit, the —— day of ——, 1895,—defendant denies
that he ever made any such statements in the presence of
Lucy A. Simons and others, but admits that on the ——
day of ——, 1895, in the presence of Frederick Cutright
and others, he did state that parties had told him (to wit,
Samuel Ballard and his wife told defendant) that plaintiff
would have better clothes if he had not spent his money
riding on the train with dirty women, and paying their
fare; which statements so made to the defendant by said

Ballard and wife defendant alleges as true. And defendant further says that, in the presence of said Frederick Cutright and others, he made the following statement: 'I have been in Lewis county, near the work of Rev. H. B. B. Amos, and people told me there (to wit, Samuel Ballard and wife) that he (said Amos) was a man of very bad character; that he spent his money running after women of bad character, paying their fare on the train.' And defendant alleges that said statements are true. Defendant denies that he made the following statement to any person, alleged in plaintiff's declaration; 'Amos can stand in the pulpit and preach a lie with more grace than any man I ever heard preach;' and defendant denies that he made the alleged statements to J. W. Simons, or any other person, on the —— day of ——, 1895, that is to say: 'If the Camp boys catch H. B. B. Amos (meaning the plaintiff) out, it will be worse for him than the egging he got in Braxton county.' 'He (meaning the plaintiff) was egged in Braxton county, and it can be proved." 'He (meaning the plaintiff) has been running over his circuit with other women, spending his money, leaving his family to make their living for themselves.' 'He (meaning the plaintiff) treats his family worse than a dog when he is at home.' And this the defendant is ready to verify. Wherefore said defendant prays judgment if said plaintiff ought to have and maintain his aforesaid action thereof against him.

"Plea No. 3. And said defendant, for further plea in this behalf, says that the plaintiff ought not to have or maintain his aforesaid action thereof against him, because he says, as to the speaking of the words in the plaintiff's declaration set forth and contained, the said plaintiff, before the speaking and the publishing of said several words of and concerning the said plaintiff as in the said declaration mentioned, to wit, on the —— day of April, 1895, did get on the cars of the West Virginia & Pittsburg Railroad at a station on the line of said road known as 'Burnsville,' in Braxton county, West Virginia, with one Edna Self, and ride on said road to the town of Sutton, in said Braxton county; and early on the following morning the said plaintiff, H. B. B. Amos, in company with said Edna Self, boarded said train at a station at or near the junction of said road at

Flatwoods siding, a distance of seven miles from Sutton, in Braxton county, and ride on said train to the town of Burnsville; and on divers other occasions said plaintiff rode over said road on the train with said Edna Self; and that said plaintiff was seen frequently and many times, both day and night, in company with said Edna Self, locked arms, walking along and over the line of said road, and both were known as and called 'track-walkers;' and that said Edna Self was then known and reputed to be a common, loose, immoral woman in the community, and of this fact plaintiff had full information, or had been so notified or warned, the said Edna Self being a married woman at the time, and living apart from her husband; and during the time of the separation of said Self woman from her husband, in the year 1894, she and said plaintiff were caught and found in unbecoming, indecent postures and positions, to wit, locked in each others' arms, and lying in the lap of said plaintiff. And the said plaintiff, before the speaking and the publishing of the said several words concerning the said plaintiff as in the said declaration mentioned, to wit, in January and February, 1895, did also, in the county of Upshur, state of West Virginia, at and near the places known in said county as 'Indian Camp' and 'Waterloo,' associate, travel, and go around with one Lucy A. Simons, a woman of bad character, loose morals, of which the said plaintiff had full information and knowledge, and, notwithstanding his possession of said knowledge and information of the character of the said Lucy A. Simons, he brought her to the homes of respectable people, and intruded her upon their hospitality, without their consent, and invitation to do so; and in said month of January, 1895, or about that time, the said plaintiff preached a violent invection and bitter sermon at Waterloo Church, in the county of Upshur, at a large congregation of the best and most respected people in that vicinity, in which he (the said plaintiff) used the following language, or words to that effect: 'Mrs. Lucy A. Simons is a credit to any of you women.' She is a woman of chastity and virtue, and you are a set of red-tongued liars. I have a thousand dollars to spend on defense of Mrs. Simons and myself, and, if that don't take us through ⌊raising his fists⌋, these will,'

—which statements are false. Also, said plaintiff, at Indian Camp Church, in said Upshur county, about February, 1895, while preaching a sermon, stated and declared that one Judge W. G. Bennett told him (plaintiff) that he (plaintiff) had authority and the power as a minister to compel and require any and all persons who attended his services to kneel down, and, on their failure or refusal to do so, he (the plaintiff) had the right to arrest them, and have them indicted, or words to that effect,—all of which statements were untrue and false. And in the year 1894 said plaintiff, on Oil creek, in Lewis county, went with said Edna Self, to the house of William G. Godfrey. Said plaintiff knocked on the door of said Godfrey's residence, and asked Mrs. Godfrey whether she had room for two stragglers, to wit, himself and Edna Self, and Mrs. Godfrey replied, 'I have room for you (meaning the plaintiff) but I won't keep that woman,' whereupon, though very late at night, the plaintiff declined to stay all night, and departed with said woman, and walked a distance of three miles, where he and the said woman remained the rest of the night. And the defendant further alleges that the plaintiff, in the year 1894, did cruelly mistreat his family, and his failing and neglect to provide necessary provisions for the comfort and sustenance of his family; and this the said defendant is ready to verify. Whereupon he prays judgment if the said plaintiff ought to have or maintain his aforesaid action thereof against him," etc.

Plaintiff obtained a writ of error, assigning the following errors: "First, because the court erred in allowing the defendant to file his three pleas Nos. 1, 2, and 3, they having been once tendered, and rejected by the court; second, because the court erred in overruling the motion of your petitioner for a continuance of this cause at the costs of said defendant upon the filing of said three pleas in open court, and in forcing your petitioner to go to trial, or take a general continuance of the cause; third, because the verdict is contrary to the law and the evidence; fourth, because the said verdict is manifestly contrary to the instruction given by the court to the jury; and, fifth, for various other errors appearing upon the record in this case. And your petitioner further represents that the

said judgment is in other respects uncertain, informal and erroneous."

I am at a loss to know which order made on the 11th day of February was set aside by the order entered on the 13th day of the same month. It is described as commencing on page 357 (presumably of the order book). As there are two orders bearing that date, and nothing in the record to show the page of the record book where they are recorded, it is impossible to know which order is thus set aside. The first of such orders is that filing defendant's plea of statute of limitations and impaneling the jury, and the other the order filing defendant's three special pleas. If the former was set aside, then there was no jury left to try the case; if the latter, the three pleas were stricken out, there being no record to connect them with the case. But it appears from the record that both the jury and the three pleas were treated as being in the case; the one to try, and the others to be tried. It is insisted by appellant that the court erred in permitting the pleas to be filed on the ground that they had been once tendered and rejected, which action was final as to said pleas, and cites in support of such contention *Wickes* v. *Railroad Co.*, 14 W. Va. 157. This authority refers to a judgment in a case which had become final on the adjournment of court, and not to an order rejecting or filing pleas. An order rejecting a plea is not such a judgment of a court finally adjudicating a case upon its merits as the judgment in the case of *Wickes* v. *Railroad* Co. If a court makes an order filing a plea, it can, at a subsequent term, on motion, strike out such plea as improperly filed; and so, when it has made an order rejecting a plea, the court may, at a sub sequent term, allow the same plea to be filed, when it appears that it had been improperly rejected, and should be filed in order to complete the pleadings before trial, imposing such conditions upon the moving party as to costs or continuance as may seem just. But were the three pleas sufficient in law, and should they have been filed? It seems to be well settled by the authorities that the truth of the defamatory matter, if intended to be relied on as a defense, must be pleaded specially; that it cannot be given in evidence under the general issue. Hogg, Pl. & Forms,.

§ 244.   And such special plea, to be good, must specify the particular facts which show the general charge to be true. *Sweeney* v. *Baker*, 13 W. Va. 158; *McClaugherty* v. *Cooper*, 39 W. Va. 317, 19 S. E. 415; Folk, Starkie, Sland. & L. p. 532, note 16; *Warner* v. *Clark*, (La.) 13, South. 203, 21 L. R. A. 502. "Where a defamatory charge is made in general terms, it can only be justified by a specification of the facts which are relied on to establish its truth." *Fry* v. *Bennett*, 5 Sandf. 54,—in which case it is held "that, as the defamatory charges in each libel set forth in the complaint were general, the averments in the answer that the facts stated in each publication were and are true, as a justification, were insufficient." See, also, *Barrows* v. *Carpenter*, 1 Cliff. 204, Fed. Case. No. 1,058; Lovell. Sland. & L. 651. In plea No. 1 the charges in the declaration are simply repeated and declared, to be true. Defendant fails to give any particulars of time, place, or occasion on which plaintiff was egged out of this own county, or what man and wife he parted, or when or where; and so with the other charges set out in said plea No. 1. Under the rules of pleading as laid down by an unbroken line of authorities, plea No. 1 is wholly insufficient.

Plea No. 2 denies that he spoke the words set forth in the declaration as alleged to have been spoken in the presence of L. A. Simons and the others, to wit, on the —— day of ——, 1895, as to the plaintiff being twice egged out of his own county, and that defendant knows this to be a fact, and the other words therein set out; but admits that on the ——, day of ——, 1895, in the presence of Frederick Cutright and others, he did state that parties had told him (to wit, Samuel Ballard and his wife told defendant) the things as set forth in the plea and in the declaration; and denies in the same plea the allegation of the declaration that he made the statements to J. W. Simons, or any other person, on the —— day of——, 1895, as set out in the declaration and plea. The denials in the plea are simply surplusage, as they can only emphasize the general plea of not guilty, which covers all denials of uttering the words charged. Plea No. 2 is sufficient as to such charges as it attempts to justify, and was properly filed.

Plea No. 3 is sufficient to justify the charges of undue

intimacy and association of the plaintiff with women of bad character, and is sufficiently specific as to the charge that "Amos can stand in the pulpit and preach a lie with more grace than any man I ever heard preach," in that he specifies that "in the month of January, 1895, or about that time, the said plaintiff preached a violent, invective, and bitter sermon at Waterloo Church in the county of Upshur, to a large congregation of the best and most respected people in that vicinity, in which he (the plaintiff) used the following language, or words to that effect:

'Mrs. Lucy A. Simons is a credit to any of you women.' 'She is a woman of chastity and virtue, and you are a set of red-tongued liars.' 'I have a thousand dollars to spend in defense of Mrs. Simons and myself, and, if that don't take us through [raising his fists], these will.'—which statements are false.    Also, said plaintiff, at Indian Camp Church, in said Upshur county, about February, 1895, while preaching a sermon, stated and declared that one Judge W. G. Bennett told him (plaintiff) that he (plaintiff) had authority and the power as a minister to compel and require any and all persons who attended his services to kneel down, and, upon their refusal or failure to do so, he (the plaintiff) had the right to arrest them, and have them indicted, or words to that effect,—all of which statements were untrue and false." And also the charge of the cruel treatment of his family is sufficiently specified, and the third plea is sufficient.

While the plea No. 1 is in itself insufficient, and should not have been filed, the pleas must be taken together; and, while the second and third pleas cannot cure the first, they cover all the charges, and justify those which are not specifically denied therein, thus rendering No. 1 harmless, unless the defendant should introduce testimony tending to prove and justify charges thereunder not justified either in the second or third pleas.   It is true that in *Hopkins* v. *Richardson*, 9 Gratt. 485 (Syl., point 8), it is held that "the admission of an improper plea is error, and the appellate court will not inquire whether the plaintiff could be injured by its admission," and Judge Lee says, in his opinion in the said case; "Nor is it any answer to the objection to say that the pleas, even if bad, could do the plain-

tiffs no harm by being in the record. That is an inquiry upon which the court should scarcely enter. Nor should it speculate upon the effect of an improper plea in prejudice of the plaintiff's rights. If it be insufficient, and no answer to the plaintiff's action, it should be rejected when objected to; nor should the plaintiff be put to an issue upon it." In *Griffie* v. *McCoy*, 8 W. Va. 201, it is held that, when the appellate court clearly sees that one of the immaterial pleas in the trial of the cause (which was submitted to the court in lieu of a jury) must have been considered by the court as being filed, and the matters therein pleaded considered by the court as though it was a good plea, and issue thereon made up, and that said plea and matters therein pleaded must have entered into and affected the judgment of the court to the prejudice of the plaintiff, the appellate court will reverse the judgment for that cause, set aside the finding of the court, and direct a new trial, with leave to perfect the pleadings before said new trial is had. In *Bank* v. *Kimberlands*, 16 W. Va. 555, at page 597, in Judge Green, writing the opinion of the court, says: "In my judgment, the refusal to reject a plea which the court ought to reject is a good ground for reversal, unless, when all the facts have been certified by the court below, it appears affirmatively to the court that the plaintiff could not be injured by having had to try his case on such improper plea." It would seem that the effect of plea No. 1, alleging, as it does, the truth of all the words complained of, if used by the defendant in the trial, could have no other effect than to prejudice defendant's case, when he could only fail to prove many of the worst charges therein claimed to be true, while it would tend to create sympathy for the plaintiff. Plea No. 1 seeks or attempts to justify every charge alleged in the declaration, yet all those charges which defendant attempts to justify by evidence are sufficiently pleaded in pleas Nos. 2 and 3. The charges that plaintiff was egged out of his own county, and that he parted a man and his wife, and that, "If the Camp boys catch H. B. B. Amos out, it will be worse for him than the egging he got in Braxton county," are all not only specifically denied in the special plea No. 2, as alleged, but they are emphatically denied by the defendant in his

testimony, and no attempt is made by the defendant in the evidence to prove those charges, true, and all the charges which defendant attempts to justify by proof are sufficiently justified by pleas Nos. 2 and 3. In *Hopkins* v. *Richardson*, *supra*, the special plea filed was insufficient to raise the issue it sought to raise, and no other plea was filed which was sufficient to properly raise the issue, and therefore the plaintiff was forced to an issue upon a bad plea; while in the case of *Griffie* v. *McCoy*, just cited, it clearly appears to the appellate court that the improper plea filed had entered into and affected the judgment of the court to the prejudice of the plaintiff. The object of a special plea is to put in issue matters which cannot be proved under the general issue and, when a case is tried before a jury, a bad plea admitted cannot prejudice the plaintiff when no evidence is offered under it. All the allegations of plea No. 1 being sufficiently covered by the general issue and special pleas Nos. 2 and 3, this rendered the filing of plea No. 1 harmless error; and the appellate court will so hold where it clearly appears from the record that no effort was made by the defendant to introduce evidence to prove the truth of charges that were not sufficiently justified in the other special pleas filed, and plaintiff could not have been prejudiced by the filing of said insufficient plea. Appellant, in his brief, says: "Suppose the pleas were good. They were not sustained by the evidence in the cause. * * * It is earnestly insisted that the evidence does not support a single charge that is sought to be justified. There is not a syllable of evidence as to some of them, and as to those the plaintiff was, in any view, entitled to recover, as the court instructed the jury." The defendant, in his testimony, emphatically denies uttering many of the words alleged against him in the declaration, and as to whether he did or not utter them was a question for the jury on the general issue; and as to the evidence touching those charges which are justified under pleas 2 and 3, it is very voluminous and contradictory, nearly six hundred pages of the record being covered by the testimony of about one hundred and thirty witnesses, and no inconsiderable portion of it being for the purpose of impeachment and bolstering up such witnesses as have

gone through the ordeal of attempted impeachment. In all this testimony—which it is the pecular province of the jury to consider and weigh—the preponderance, especially on the charges against the plaintiff of improper intimacy and association with women of bad character, is decidedly with the defendant, and as to all the charges justified by pleas 2 and 3 there is evidence to sustain a verdict.

As to the second assignment of error: The three special pleas were permitted to be filed at the term at which the jury was impaneled. It is claimed by appellant that he was entitled, on the filing of said pleas, to a continuance, at the costs of the defendant, under section 8, chapter 131, Code. The question of continuance generally is one addressed to the sound discretion of the court; but section 8, makes provision for amendments of the pleadings at the trial in case of a variance between the evidence and allegations or recitals, when the court may, if, in its opinion, substantial justice will be promoted thereby, allow the pleading to be amended; and, if it be made to appear that a continuance of the cause is rendered necessary by such amendment, such continuance shall be at the costs of the party making the amendment. This provision is obviously just, as a change in the pleadings after the taking of evidence may be a surprise to the opposite party, and he should have an opportunity to prepare to meet the new phase of the case. Yet he must make it appear that time is necessary for such preparation. In the case at bar these same special pleas had been tendered by the defendant at the previous term, and had been rejected by the court; and it is asserted by counsel for appellee in his brief, and not denied, that the special judge elected to try the case, and who rejected the pleas, stated to counsel in open court that he would permit the introduction of the same evidence under the general issue that he would have permitted under the special pleas so rejected. At the previous term of the court the cause had been continued on the motion of plaintiff, and the court was in position to exercise its sound discretion as to the terms of continuance. "Unless it is plainly apparent that such discretion has been abused, this court will not interfere therewith." *Bank* v. *Hamilton,* 43 W. Va. 75, (27 S. E. 296); *Marmet*

*Co.* v. *Archibald* 37 W. Va. 778, (17 S. E. 299); *Buster* v. *Holland*, 27 W. Va. 511; *Logie* v. *Black*, 24 W. Va. 21; *Riddle* v. *McGinnis*, 22 W. Va. 253. It does not appear that the filing of the pleas, although at the trial term, comes within the provisions of section 8, chapter 131, Code, as it appears that plaintiff had due notice of the character of testimony that might be introduced, and the record shows that he was prepared to meet it, and was not surprised.

As to the third assignment,—that the verdict was contrary to the law and the evidence,—it is disposed of by what has been said. And, further, that the verdict is manifestly contrary to the instructions given by the court to the jury. Appellant has not discussed this proposition in his brief, and he surely had the benefit of all the instructions he could have desired; and, after patiently listening to and weighing the large mass of testimony, which it took eight or ten days to get before the jury (which appears to have been an intelligent body, and satisfactory to both parties), the jury, with the instructions of the court as to the law in the case still before them and fresh in their minds, and the oath they had taken to well and truly try the issues joined not forgotten,—these twelve "good and lawful men,"—find the issues for the defendant, and that verdict is satisfactory to the judge who presided at the trial, and instructed the jury as to the law of the case under section 2, chapter 103, Code, which says: "All words which, from their usual construction and common acceptance, are construed as insults, and tend to violence and breach of the peace, shall be actionable. No demurrer shall preclude a jury from passing thereon." So it is made by statute the peculiar province of the jury to say whether the words proven to be spoken are insults, and tend to breach of the peace or not. The appellate court has before it the whole record, pleadings, and facts as brought out in the testimony of almost innumerable witnesses; and, unless it appears upon the whole record that the appellant has been prejudiced, the judgment should not be reversed. "The system of appeals is founded upon public policy, and appellate courts will not encourage litigation by reversing judgments for technical, formal, or other error, which the record affirmatively shows could not have prejudiced the

appellant's rights.   Where it appears from the record that the error alleged therein on behalf of the appellant could have worked no injury to him, and could not have changed the result, the judgment of the court below will be affirmed."   2 Am. & Eng. Enc. Law, (1st Ed.) 500; *Ball v. Cox*, 29 W. Va. 407, (1 S. E. 673;) *Moran v. Clark*, 30 W. Va. 358, (4 S. E. 303); *Tully v. Despard*, 31 W. Va. 370, (6 S. E. 927).   Nearly every state in the Union has held this doctrine.   In *Lancaster v. Collins*, 115 U. S. 222, 8 Sup. Ct. 33, 29 L. Ed. 373, it is held: "No judgment will be reversed in a court of errors where it is clear the error could not have prejudiced, and did not prejudice, the rights of the party against whom the ruling was made."   And to the same effect the supreme court of the United States has held in many other cases.   In *Kennett v. Peters*, 54 Kan. 119, 37 Pac. 999, it is held that "a judgment, if shown to be correct by the pleadings and evidence, cannot be disturbed on appeal, notwithstanding errors may have occurred upon the trial."   This Court is careful about disturbing the verdict of a jury which has been approved by the trial court, and will not do so unless it is palpably wrong.   *Sheff v. City of Huntington*, 16 W. Va. 207, (Syl., point 13): "Where a case has been fairly submitted to a jury, and a verdict fairly rendered, it ought not to be interfered with by the court unless manifest wrong and injustice has been done, or unless the verdict is plainly not warranted by the evidence or facts proved." *State v. Thompson*, 21 W. Va. 741; *Gwynn v. Schwartz.* 32 W. Va. 487, (9 S. E. 880); *Akers v. DeWitt*, 41 W. Va. 229, (23 S. E. 669); *Gilmer v. Sidenstricker*, 42 W. Va. 52, (24 S. E. 566); *Sigler v. Beebe*, 44 W. Va. 587, (30 S. E. 76).   I conclude that the verdict in the case is sustained by the evidence, and should not be disturbed, and the judgment is affirmed.

*Affirmed.*