## Staunton.

## ELY v. GRAY, ADMINISTRATRIX.

### September 17, 1919.

1. APPEAL AND ERROR—*Special Plea—Failure to Verify as Ground for Reversal.*—Where in an action of debt the defendant pleaded *nil debet, non est factum,* and two additional pleas in writing, the fact that there was no verification of the special pleas is not in itself a ground of reversal.

2. APPEAL AND ERROR—*Special Pleas—Matters Provable Under the General Issue.*—In an action of debt the defendant pleaded *nil debet; non est factum,* and two special pleas in writing. No evidence was introduced under the special pleas; the only possible reason upon which to base a complaint against them was that they improperly injected into the case damaging and unsupported charges against the plaintiff.

   *Held:* That if it be true, as the objection concedes, that the matters set up by the special pleas were provable under the general issue, then the objection to the pleas carried its own refutation.

3. APPEAL AND ERROR—*Special Pleas—Filing of as Harmless Error.*—When pleas are improperly admitted, but no evidence offered in support thereof, the error will not be ground of reversal, if it appears, as it does in the instant case, that the plaintiff could not have been injured thereby. Here the defense imputed to the plaintiff a straight-out forgery, thus involving him in a charge implying as much moral turpitude as the special pleas complained of.

4. BILL OF PARTICULARS—*Demurrer.*—A bill of particulars, or a statement of the grounds of the defense, being no part of the pleadings, defects therein cannot be reached by demurrer, or by objections equivalent to a demurrer.

5. PLEADING—*Statement of Grounds of Defense.*—In an action of debt, defendant pleaded *nil debet* and *non est factum,* and upon the court's order requiring defendant to file a bill of particulars, she filed a statement of her grounds of defense, alleging that the plaintiff had forged the instrument sued upon, and that in an attempt to carry out a general scheme of fraud, had not only forged the note sued upon, but other notes on other parties, naming them.

*Held:* That the scope of defendant's pleadings was broad enough to warrant the introduction of evidence in proof of the facts set up in the grounds of defense.

6. FORGERY—*Evidence—Other Forgeries.*—In an action of debt on a note the defense relied on was that the instrument sued upon was a forgery, and that the plaintiff had forged it, and in a general scheme of fraud had not only forged the note sued upon, but other notes on other parties.

*Held:* That the testimony of a witness that plaintiff asserted that parties were indebted to him when they were not was admissible, although the witness did not say that plaintiff claimed to hold notes for the indebtedness, as men do not generally have outstanding debts due them without taking notes therefor. The usual course of business is to the contrary.

7. FORGERY—*Evidence—Other Forgeries.*—Defendant claimed that the signature of the instrument sued upon had been forged, and averred that this forgery was a part of a general scheme of fraud, pursuant to which the plaintiff had forged not only the note in question, but notes on other parties. In cases of this character the trial courts are confronted with the delicate and difficult task of supervising the evidence in such manner as, on the one hand, to protect the party charged with fraud against the building up of an imaginary and fictitious theory, and, on the other hand, to permit a full and free investigation of the charge as made.

8. FRAUD AND DECEIT—*Evidence—Admissibility—Evidence of Other Frauds.*—In actions involving charges of fraud, seldom capable of establishment by direct proof, large latitude should be and always is allowed in the admission of circumstantial evidence, and objections thereto for irrelevancy are not favored. Evidence of other similar frauds committed by the same party at or near the same time is admissible.

9. FRAUD AND DECEIT—*Evidence—Other Frauds.*—Actual fraud is always attended by an intent to defraud, and the intent may be shown by any evidence that has a tendency to persuade the mind of its existence. If a motive exist prompting to a peculiar line of conduct, and it be shown that in pursuing that line a defendant has deceived and defrauded one person, it may justly be inferred that similar conduct toward another, at or about the same time, and in relation to a like subject, was actuated by the same spirit.

10. FORGERY—*Evidence—Other Forgeries—Remoteness.*—Where the defense to an action upon a note was that the note was forged and that the forgery was a part of a general scheme of fraud, pursuant to which the plaintiff had forged not only the note in question, but notes on other parties, testimony that two and one-half years prior to the date of the note sued on, plaintiff

falsely claimed to hold the notes of one of these parties, was not too remote to be considered by the jury, where there was other evidence tending to show that at more recent dates defendant was still claiming to have notes against this party.

11. CIRCUMSTANTIAL EVIDENCE —*Objections on the Ground of Irrelevancy not Favored.*—Whenever the necessity arises for a resort to circumstantial evidence, either from the nature of the inquiry or the failure of direct proof, objections to testimony on the ground of irrelevancy are not favored, for the reason that the force and effect of circumstantial facts usually and almost necessarily depend upon their connection with each other. Circumstances altogether inconclusive, if separately considered, may, by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof.

12. APPEAL AND ERROR—*Evidence—Harmless Error—Admission of Irrelevant Testimony.*—In an action against an administratrix on a note where the defense was that the note was a forgery, executed· as part of a general scheme of fraud, pursuant to which plaintiff had forged not only the note in question, but notes on other parties, the mere fact that plaintiff had shown a witness a note signed by defendant's intestate, unaccompanied by anything to impeach its genuineness, was immaterial, and should have been excluded. It was harmless, however, because if there was any inference to be fairly drawn from it, that inference would have been that the defendant had made a charge against the plaintiff which she was unable to support by proof.

13. WITNESSES—*Transactions With Deceased Persons.*—In an action of debt against an administratrix on a note alleged to bear the signature of her intestate, the defense relied on was that the signature of the intestate was a forgery and that this forgery was a part of a general scheme of fraud, pursuant to which the plaintiff had forged not only the note in question, but notes on other parties. Plaintiff offered himself as a witness to deny the testimony of other witnesses in support of this defense as to conversations with him. The court upon objection by the defendant, declined to permit the witness to testify on the ground that the death of defendant's intestate rendered him incompetent.

*Held:* No error.

14. WITNESSES—*Transactions with Deceased Persons—Test of Competency.*—Under section 3346, subsection 2, Code of 1904, the general rule is that the test of competency under the statute is to be found, not in the fact as to which the party is called to testify, but in the contract or other transaction which is the subject of the investigation; and if such contract or other

transaction was with a person who has since died, the other party cannot be allowed to testify at all as to any fact in the case.

The Code of 1919 it may be noted wholly changes the law of evidence in this respect. Section 6209, Code of 1919, 5 Virginia Law Register, N. S., 126.

15. WITNESSES—*Competency.*—A witness cannot be competent for one purpose and incompetent for another.

16. APPEAL AND ERROR—*Conflicting Evidence.*—Where the evidence as to the genuineness of the signature on a note sued upon was conflicting, the controversy was peculiarly one for decision by the jury and their verdict cannot be disturbed on appeal.

Error to a judgment of the Circuit Court of Lee county in an action of debt. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*J. C. Noel,* for the plaintiff in error.

*Davidson & Robinett* and *Pennington & Cridlin,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

This is an action of debt brought by T. P. Ely against G. C. Duff's administratrix on a negotiable, promissory note under seal for $1,055. bearing the signature of Duff and payable to the order of Ely. The defense relied upon was that the signature to the note, the body of which was wholly in the handwriting of Ely, was a forgery. There was a verdict and judgment below in favor of the defendant.

There are ten assignments of error, some of which are practical duplications of others. In the petition for the writ of error, which constitutes the only brief furnished by the plaintiff in error, no authorities are cited by the

learned counsel in support of any of the propositions advanced.

1. The record shows that the defendant pleaded *nil debet*, *non est factum*, and two additional special pleas in writing, and error is assigned to the action of the trial court in permitting these two special pleas to be filed.

Special plea No. 1 was to the effect "that the said plaintiff applied to the said G. C. Duff in his lifetime, and requested him to become surety for said plaintiff on a note to be executed by the said plaintiff as principal, and the said G. C. Duff as surety; that the said plaintiff represented to the said G. C. Duff that he did not know from whom he could secure the money, and induced the said G. C. Duff to sign his name upon a blank piece of paper on which was written two seals, one above the other, the said G. C. Duff signing on the line in front of the last seal, the said plaintiff representing to the said G. C. Duff that he would sign his name in front of the first of said seals and when he found a person who would loan him the money that he, the said Ely, would then write out the note for such amount as was secured and payable to the person from whom he obtained the same; and the said defendant says that the said plaintiff wickedly, and with intent to cheat and defraud, the said G. C. Duff, and in a secret place away from the said G. C. Duff, wrote out the said supposed note sued on over the signature of said G. C. Duff; and the said defendant further says that the said supposed instrument sued on was without consideration and is void for lack of consideration and on account of the fraud perpetrated by the said plaintiff aforesaid."

Special plea No. 2 averred "the said plaintiff, with a view to avoid the payment of taxes, failed and refused to make out and deliver a list and statement as provided by the statutes and laws of Virginia to the commissioner of the revenue, whereby the supposed obligation sued on might be legally and properly taxed, in the manner provided by law."

No evidence whatever was introduced to support the averments contained in either of the special pleas; and, therefore, if the filing of the same constituted reversible error, it was only because of their presence in the record.

The bill of exceptions does not disclose the grounds of objection to these pleas, but the objections as presented to us are that the pleas were not sworn to, that they represented no issue that could not have been proved under the general issue, and that they tended to confuse and prejudice the jury.

[1-3] The fact that there was no verification of the pleas is not in itself a ground of reversal. *Grayson* v. *Buchanan,* 88 Va. 251, 257, 13 S. E. 457, and we have no difficulty in holding that there is no other ground upon which their admission can be said to have been prejudicial to the plaintiff. No evidence thereunder having been offered, the only possible reason upon which to base a complaint against them is that they improperly injected into the case damaging and unsupported charges against the plaintiff. If it be true, as the objection concedes, that the matters set up were provable under the general issue, then the objection carries its own refutation. *Sutherland* v. *Wampler,* 119 Va. 800, 802, 89 S. E. 875. Whether this concession is warranted or not, the fact is that the real defense and the evidence introduced to sustain it, while not in accord with either of the special pleas, imputed to the plaintiff a straightout forgery of the instrument sued on, thus involving him in a charge implying certainly as much moral turpitude as the special averments complained of. When pleas are improperly admitted. but no evidence offered in support thereof, the error will not be ground of reversal if it appears, as it does here, that the plaintiff could not have been injured thereby. *Bank* v. *Kimberland,* 16 W. Va. 555, 557; *Amos* v. *Stockert,* 47 W. Va. 109, 34 S. E. 821, 826; *Tower* v.

*Whip,* 53 W. Va. 158, 44 S. E. 179, 181, 63 L. R. A. 937.
The opinion of this court in *Hopkins* v. *Richardson,* 9 Gratt.
(50 Va.) 485, in so far as it conflicts with the conclusion
here announced, does not commend itself to us as sound,
is out of harmony with the doctrine of harmless error as
prevailing in this jurisdiction, and is disapproved.

[4, 5] 2. It is next insisted that the court erred in per-
mitting the defendant·to file the following statement of her
grounds of defense: "That the plaintiff had forged the
note or instrument sued upon; that he, in an attempt to
carry out a general scheme of fraud, had not only forged
the note sued upon, but that he had forged other notes on
other parties, to-wit, notes on Vass Banner, a note or notes
on J. F. Witt, another note on John B. Pennington, with
G. C. Duff as surety thereon, for $500, and that he had
forged the name of G. C. Duff as surety on a note which
plaintiff held against Wade Ladd and Bertha Ladd."

This statement was, tendered and allowed to be filed in
response to the plaintiff's motion and the court's conse-
quent order requiring the defendant to file a bill of particu-
lars showing the grounds of her defense. The record does
not disclose the reasons assigned by the plaintiff in the
lower court for his objections to this statement, but as urged
here they are "that there was no proper plea upon which
to base such a bill of particulars; and because the same
could only tend to confuse and prejudice the jury."

A bill of particulars, or a statement of the grounds of de-
fense, being no part of the pleadings, defects therein can-
not be reached by demurrer, or, as is true here, by objec-
tions equivalent to a demurrer. *Geo. Campbell Co.* v. *Geo.
Angus Co.,* 91 Va. 438, 22 S. E. 167; *Columbia Accident As-
sociation* v. *Rockey,* 93 Va. 678, 25 S. E. 1009; *King* v. *N. &
W. R. Co.,* 99 Va. 625, 39 S. E. 701. It is, of course, con-
ceivable that a bill of particulars containing improper alle-
gations might be so exploited before a jury as to constitute

reversible error, but nothing of that character occurred in
this case.

Furthermore, not only was the scope of the defendant's
pleadings broad enough to warrant the introduction of evi-
dence in proof of the facts set up in the grounds of defense,
but some such evidence was in fact introduced and was
properly admitted, as appears from what is said in the
course of this opinion concerning the other assignments
of error.

[6] 3. There were a number of exceptions to the rulings
of the trial court in the admission of testimony, the disposi-
tion of which in this court will require a somewhat detailed
recital of parts of the evidence.

The defendant introduced as a witness Mrs. Sallie Wy-
gal, who testified that in the summer or early fall of the
year 1915 the plaintiff stated to her that Vass Banner and
J. F. Witt owed him some money; that she did not know
that he said he had notes against these parties; that, as best
she could remember, he said Witt owed him $1,000; that she
told him she wanted to borrow some money, and he said if
he could collect it he would lend it to her; that he claimed
to be getting ten per cent interest from Witt, but would
charge her six per cent.

J. F. Witt was introduced, and testified that he never
owed Ely $1,000 or any other sum; that he had been owing
Ely's brother $1,500 for three or four years, which he had
repaid in three installments, the last one being paid shortly
before the trial; that, so far as he could remember, he had
never borrowed any money from or executed any notes to
the plaintiff.

J. F. Flanary testified that, in the summer of 1913, the
plaintiff showed him three notes, one for $285, one for $300,
and one for an amount which he did not remember, all pay-
able to the plaintiff and bearing the signature of Vass Ban-
ner.

There was further testimony on behalf of the defendant, as follows: (1) By the witness A. T. Skidmore that the plaintiff told him that he had a note on Vass Banner for $1,500 and was likely to become the owner of the Jeans farm, owned by Banner, adjoining that of the plaintiff; (2) by the witness John Collier, that the plaintiff, while trying to borrow some money from Collier, had told him that he had a note against Vass Banner for $1,500; (3) by the witness Wright Collier, that Ely, on an occasion when he was renewing a note which he owed to Wright Collier, told him that Banner owed him $1,100; (4) by the witness Harrison Phipps, that the plaintiff had told Phipps that Banner was indebted to him, and he was going to become the owner of the Jeans place adjoining him; (5) by the witness William Phipps, that Ely told him that Banner owed him $1,500, adding, "I have got to call on him at once; if he don't pay me, I am going to take possession of the Jeans farm;" (6) by the witness Vass Banner, that he had never owed the plaintiff any of the notes or sums of money mentioned in the above-recited testimony; that the only note he ever gave him was one for $69.75, in 1913, which had been paid; that having heard some reports about Ely's claim in regard to the aforesaid notes, and after the present suit was brought, he approached Ely in regard to the matter, and Ely said that he had not made the statements and agreed to go before a justice and make an affidavit accordingly, and not finding a justice, went before the deputy clerk and made oath that Banner did not owe him any of the amounts in question; (7) by the witness J. M. Woliver, that a short time after the death of G. C. Duff the plaintiff claimed to have a debt against the Duff estate for $500, and afterwards stated that the amount was $1,000.

There was also evidence on behalf of the defendant tending to show that G. C. Duff, a man eighty-four years of age at the time of his death, was in comfortable circumstances

and not in the habit of borrowing money, and that at about the date of the note sued on, Ely himself was embarrassed financially and made several efforts to borrow money. M. O. Combs, the county treasurer, testified that on January 6, 1916, the plaintiff, who was acting as his deputy, owed him about $1,300, and that at different times he was pressing the plaintiff for settlement.

' (a) It is urged upon us that the court erred in admitting the testimony of Mrs. Wygal, and the reason assigned is that what she said did not prove or tend to prove that the plaintiff ever held or claimed to hold a note against J. F. Witt or Vass Banner.

It is true that Mrs. Wygal did not undertake to say that the plaintiff claimed to hold notes for the indebtedness he asserted against Witt and Banner, but it can hardly be said that his statement to her did not imply the existence of such notes. Men do not generally have outstanding debts due them, and on which they are collecting interest, without taking notes therefor. The usual course of business is to the contrary. Furthermore, so far as the objection relied upon affects what Mrs. Wygal said about Vass Banner, it cannot be very seriously regarded because there is an abundance of uncontradicted evidence from other witnesses showing that Ely did claim that he had notes on Banner, some of which he actually exhibited to the witnesses, and all of which are shown to have been fraudulent.

It is perhaps but fair to the plaintiff to say that he offered to testify in his own behalf, and that if the court had held him to be a competent witness, he would have testified in flat denial of practically all the evidence in regard to his claim of notes and indebtedness against other persons. His evidence, of course, was not before the jury. Whether his standing before them would have been improved by such a statement from him in the face of the array of witnesses

against him is a question which suggests itself, but is not very material to the decision of the case.

As to the plaintiff's alleged claim of indebtedness against Witt, Mrs. Wygal was the only witness, and if there were no other evidence to support the defendant's theory of a general fraudulent motive and scheme on the part of the plaintiff, her testimony as to the Witt debt would not be competent. Taken with the evidence as a whole, however, it presented to the jury a circumstance proper for their consideration.

[7] The issue upon which the case was fought out before the jury was whether the note sued on was genuine. The defendant claimed that the signature had been forged, and averred that this forgery was a part of a general scheme of fraud pursuant to which the plaintiff had forged not only the note in question, but notes on other parties. In cases of this character the trial courts are confronted with the delicate and difficult task of supervising the evidence in such manner as, on the one hand, to protect the party charged with fraud against the building up of an imaginary and fictitious theory, and, on the other hand, to permit a full and free investigation of the charge as made. A careful consideration of the record satisfies us that the circuit court in the instant case has met and discharged this duty with skill and fairness.

[8] In actions involving charges of fraud, seldom capable of establishment by direct proof, large latitude should be and always is allowed in the admission of circumstantial evidence, and objections thereto for irrelevancy are not favored. Evidence of other similar frauds committed by the same party at or near the same time is admissible. 1 Jones on Ev. (Horwitz 1913 Ed.), sec. 142; 1 Wig. on Ev., sec. 304; *Piedmont Bank* v. *Hatcher,* 94 Va. 229, 331, 26 S. E. 505; *Lowance* v. *Johnson,* 75 W. Va. 784, 83 S. E. 937, 940; *Castle* v. *Bullard,* 64 U. S. (23 How.) 172, 16 L. Ed. 426,

428; *Butler* v. *Watkins*, 80 U. S. (13 Wall.) 456, 20 L. Ed. 629; *Mutual Life Insurance Co.* v. *Armstrong*, 117 U. S. 591, 6 Sup. Ct. 877, 29 L. Ed. 997.

[9]  The rules of evidence recognized in the foregoing authorities and applicable to the instant case are well summarized in the following extract from Jones on Evidence, *supra* (section 142, page 720) : "Actual fraud is always attended by an intent to defraud, and the intent may be shown by any evidence that has a tendency to persuade the mind of its existence. If a motive exists prompting to a peculiar line of conduct, and it be shown that in pursuing that line a defendant has deceived and defrauded one person, it may justly be inferred that *similar conduct toward another*, at or about the same time and in relation to a like subject, was actuated by the same spirit."

[10]  (b) It is true, as pointed out· by counsel for the plaintiff in error, that the witness Flanary fixed the time of his conversation with the plaintiff concerning certain notes on Vass Banner about two and a half years prior to the date of the note sued on, but other evidence in the case tends to show that subsequently and at more recent dates he was still claiming to have notes in various amounts against Banner, which Banner testified were never in existence, and which the plaintiff in his affidavit before the deputy clerk admitted he did not hold.  The testimony given by Flanary, therefore, was not too remote to be considered by the jury along with the other facts and circumstances in the case.

[11]  We may well conclude the discussion of this branch of the case with the following extract from the opinion of the Supreme Court of the United States in *Castle* v. *Bullard, supra:* "Whenever the necessity arises for a resort to circumstantial evidence, either from the nature of the inquiry or the failure of direct proof, objections to testimony on the ground of irrelevancy are not favored for the reason that

the force and effect of circumstantial facts usually and almost necessarily depend upon their connection with each other. Circumstances altogether inconclusive, if separately considered, may by their number and joint operation, especially when corroborated by moral coincidents, be sufficient to constitute conclusive proof. Applying these principles to the several exceptions under consideration, it is clear that no one of them can be sustained."

[12] (c) It is insisted that the court erred in permitting the witness James Collinsworth, whose evidence has not heretofore been mentioned, to testify, as he did, that the plaintiff had showed him a note signed by John B. Pennington, with G. C. Duff as surety, for $500 payable to the plaintiff, and that at the time of this occurrence Pennington and Duff were both dead. The objection urged to this evidence is that there was nothing else before the jury to show that the plaintiff ever had such a note, and nothing to show that, if he did have it, the note was a forgery. The state of the evidence before the jury in this regard is correctly recited in the objection, but it is difficult to see how the testimony in question could have prejudiced the plaintiff. The mere fact that he had shown the witness a note on Pennington and Duff, unaccompanied by anything to impeach its genuineness, was immaterial and should have been excluded, but it was harmless so far as the plaintiff was concerned. If there was any inference to be fairly drawn from it, that inference would have been that the defendant had made a charge against the plaintiff which he was unable to support by proof, and, as said in *Amos* v. *Stockert, supra,* the natural tendency of a failure to produce such proof would have been to create sympathy for the plaintiff.

[13-15] 4. The plaintiff was offered as a witness in his own behalf for the purpose of rebutting and denying the testimony of Flanary, Collingsworth, Collier and others, who had testified as hereinbefore set out to certain conver-

sations with him. The court, upon objection by the defendant, declined to permit the witness to testify on the ground that the death of G. C. Duff rendered him incompetent. It is contended that the plaintiff's testimony would have related only to collateral issues raised by defendant's evidence in no way connected with the alleged note executed to Ely by Duff, and that the action of the court, therefore, was erroneous. The question is settled to the contrary of this contention by section 3346, subsection 2, of the Code, and by the decisions of this court construing the same. The execution of the note constituted the sole contract or transaction which was the subject of the investigation within the meaning of the statute. The general rule clearly embracing the testimony here involved is that the test of competency under the statute is to be found, not in the fact as to which the party is called to testify, but in the contract or other transaction which is the subject of the investigation; and if such contract or other transaction was with a person who has since died, the other party cannot be allowed to testify at all as to any fact in the case. *Mason* v. *Wood*, 27 Gratt. (68 Va.) 783; *Grigsby* v. *Simpson*, 28 Gratt. (69 Va.) 348; *Morris' Ex'r* v. *Grubb*, 30 Gratt. (71 Va.) 286; *Carter* v. *Hale*, 32 Gratt. (73 Va.) 115; *Mutual Life Insurance Co.* v. *Oliver*, 95 Va. 445, 448, 28 S. E. 594. This result would seem to follow logically from the settled general rule that a witness cannot be competent for one purpose and incompetent for another. *Steptoe* v. *Read*, 19 Gratt. (60 Va.) 1; *Carter* v. *Hale, supra; Brock* v. *Brock*, 92 Va. 173, 23 S. E. 224; *Hoge* v. *Turner*, 96 Va. 631, 32 S. E. 291.

In *Wright* v. *Collins*, 111 Va. 806, 69 S. E. 942, a case in which Collins, one of the parties to the transaction which was the subject of investigation, was dead, and in which the administrator had testified to certain statements made by Wright (one of the adverse surviving parties) after the death of Collins, it was held that Wright was competent as

91

a witness to deny the statements thus imputed to him. The decision in that case was based upon a construction of the statute as it existed prior to the enactment of section 3346 in its present form, the reasoning of the court being that Wright would have been competent under the former statute for the purpose for which he was introduced, and that the change in the statute could not be construed to impose any disqualification on a witness which had not theretofore existed. The decision was in express terms limited to the precise issue in that case, and is not to be understood as changing the general rule as stated above.

That there is reason to doubt the expediency and justice of the rule as thus laid down cannot be doubted, and is conceded in some of the decisions cited above. The Code of 1919, becoming effective in January, wholly changes the law of evidence in this respect. (5 Va. L. Reg. 125.) The application of the rule in the instant case, as already pointed out, has perhaps not worked any hardship. A local jury would have been slow in giving credence to the plaintiff's testimony in contradiction of such a large number of unimpeached witnesses who had testified against him.

[16] There was a motion for a new trial based upon the alleged errors already disposed of, and also upon the ground that the verdict was contrary to the law and the evidence. With reference to the latter ground it need only be said that the evidence as to the genuineness of the signature on the note was conflicting, involving much expert and semi-expert testimony, and that upon this, as well as upon the collateral issues in the case, the controversy was peculiarly one for decision by a jury. Their finding either way upon these questions would have been binding upon us, and we cannot disturb the verdict. The judgment must be affirmed.

*Affirmed.*