## CHARLESTON.

TRIS COLCORD *v.* THE GAZETTE PUBLISHING COMPANY

(No. 6025)

Submitted September 18, 1928.   Decided November 27, 1928.

*File, Goldsmith & Scherer*, for plaintiff in error.
*T. S. Clark* and *Williams & Riffe* and *McGinnis & McGinnis*, for defendant in error.

LITZ, JUDGE:

The plaintiff, Tris Colcord, obtained this writ to a judgment of the circuit court entered upon the verdict of a jury in

favor of the defendant, The Gazette Publishing Company, in an action of trespass on the case for libel, and insulting words under section 2, chapter 103, Code, providing that all words which, from their usual construction and common acceptation, are construed as insults, and tend to violence and breach of the peace, shall be actionable, and that no demurrer shall preclude a jury from passing thereon.

The basis of the suit is the publication on July 21, 1926, in The Charleston Gazette, a daily newspaper, issued by the defendant at Charleston and circulated throughout the state, of the following article:

## "FEAR OF ARREST SOLVES MYSTERY

(Tells story of murder year old to secure leniency on jail breaking charge.)

Fear that he would be arrested and severely sentenced for his part in a jail break prompted Clayton Webb to send word through his father that if he was promised leniency for his escape from the Boone county jail he would give his story of the shooting of Frank Evans, Eunice, Raleigh County, in May of 1925.

Notified of the man's desire to give himself up, Sergeant William G. Brown, of Company 'B', West Virginia state police, secured the promise of leniency from the prosecuting attorney of Boone county which was desired by the fugitive. When he surrendered to the trooper, Webb gave a signed confession of implication in the murder and named Dell Roar, as the man who fired the fatal shot killing Evans, the proprietor of a gambling house.

Webb's confession said that he, in company with Roar and Tris Colcord, went to the home of Evans with the intention of playing poker and 'taking the Greek's money.' He says that when they reached the house the door was opened by Evans and that without warning Roar fired at Evans, inflicting the wounds which resulted in his death.

No motive for the murder is given by Webb or by Tris Colcord, who was arrested on a warrant and gave a written account of his version of the murder. Roar was also arrested by the troopers following the confession and affidavits, and is

being held in the Raleigh county jail for the grand
jury. Webb and Colcord are being held in five hun-
dred dollar bond each as material witnesses of the
murder.

At the time of the killing three men, including
Webb, but not Roar and Colcord, were arrested
and later released when it was found that the evi-
dence was not strong enough .to convict them of
murder. Webb was later arrested on a charge of
pistol-toting and having moonshine in his posses-
sion. It was on this charge that he was sentenced
to jail for six months in Boone County, where he
escaped two months later.''

(Webb had made a statement concerning the death of
Frank Evans, but it did not in any way implicate Colcord.)

A day or two later E. Clyde Scott, Prosecuting Attorney
of Raleigh county, where the plaintiff resides, transmitted by
mail to the Editor of The Charleston Gazette a letter stating:

''Editor Gazette:

In the issue of your paper under date of July
21, 1926, on page 13, I note you have an article
headed 'Fear of arrest solved mystery' in which
article it is stated that Clayton Webb made a con-
fession to his part in the murder of Frank Evans
at Eunice in Raleigh county in the month of May,
1925. This statement purports to convey the infor-
mation that Clayton Webb in company with Dell
Rorer and Tris Colcord went to the home of Evans
with the intention of playing poker and 'taking
the Greek's money.' It also goes ahead and states
that Tris Colcord upon being arrested on a·war-
rant accusing him of complicity in this crime gave
a written account of his version of the murder;
and that he and Webb are now held under a
$500.00 bond conditioned for their appearance as
material witnesses against Rorer, whose trial will
come up at the October term of the Raleigh county
criminal court.

I take it that some one has either wilfully and
maliciously or mistakenly given you this news
item, and I beg to state that Tris Colcord was in
no way or manner connected with this crime.
Clayton Webb did make a confession that he in

company with Arthur Arliff and Dell Rorer went to the Greek's shanty with the purpose in mind outlined in your news item, but he stated that Tris Colcord had nothing whatever to do with this affair, and upon a complete investigation made by the undersigned I assure you that Mr. Colcord is entirely innocent and has been much wronged by false statements made by different people, whom I take to be his enemies, made I am sure with no other purpose than to maliciously slander his good name.

I hope you will, in justice to Mr. Tris Colcord, correct the item above referred to.''

This letter was published in the Gazette July 24, 1926, with an appended editorial note reading: ''Editor's Note: The Gazette is always glad to make a correction of a mistake and to rectify any such mistake in so far as it lies within its power.''

A demurrer to the declaration having been overruled, the defendant pleaded the general issue and filed a written statement setting forth, as grounds of defense, good faith in the publication of the article, prompt apology therefor, and the truth of its statements. The plaintiff, twenty-nine years of age, is a graduate of the Engineering Department of West Virginia University and resides at Montcoal, Raleigh county, where he has practiced his profession as a mining engineer for several years. He bears the reputation of a law-abiding citizen.

The rulings of the trial court, in refusing instruction number three requested by the plaintiff and in granting instructions numbers 1, 2, 3 and 5 on behalf of the defendant, are assigned as errors.

Instruction number 3 requested by the plaintiff would have told the jury that the alleged libelous statements in the published article concerning the plaintiff are presumed to be false. ''The truth of the publication in an action for slander or libel, is a matter of defense, and the burden of proof is on defendant to prove the truth of the words uttered, and not on the plaintiff to prove their falsity.'' 17 R. C. L., 420. The plaintiff was not prejudiced by the ruling complained

of, however, because the court granted at his request other similar instructions.

Instruction number 2 of the defendant submitted to the jury the determination of the issue "whether or not the words contained in the article complained of from their usual construction and common acceptation should be construed as insults and tending to violence and breach of the peace;" and its instruction number 5 told the jury that they should find for the defendant on the charge of insulting words under the statute if they should find from the evidence that the words published did not tend to violence or a breach of the peace. It is within the province of the jury under the statute to determine whether or not the words used from their usual construction and common acceptation should be construed as insults and tending to violence and breach of the peace. *Amos* v. *Stockert,* 47 W. Va. 109, 125; *Corr* v. *Lewis,* 94 Va. 24; *Poling* v. *Pickens,* 70 W. Va. 117; *Barger* v. *Hood,* 87 W. Va. 78.

Instruction number 3 of defendant authorized the jury to consider the evidence of its good faith in publishing the defamatory article "upon the question of mitigation of damages, if they believe from all the evidence in the case that plaintiff was damaged". This instruction would have been proper except for the provision requiring, by implication, proof of special damages to plaintiff to sustain a verdict in his favor.

Under instruction number 1 of defendant the jury were directed to find for the defendant if they believed from all the facts and circumstances in the case that the plaintiff was not injured by publication of the defamatory article. This instruction is plainly erroneous. Any printed or written publication imputing to another a crime or moral delinquency is actionable *per se* without proof of special damages. *Sweney* v. *Baker,* 13 W. Va. 158. In point 7 of the syllabus of that case it is held: "An editor of a newspaper has no peculiar privilege of publishing what is injurious to another. He can only publish with immunity that which any other person would have an equal right to publish in a newspaper." To constitute a libel it is not necessary that the writing should

impute an offense for which one may be indicted and punished. It is sufficient if the language tends to injure the reputation of the party, to throw contumely, or to reflect shame and disgrace upon him, or to hold him up as an object of scorn, ridicule or contempt. And the words will be understood in their plain and ordinary import. *Adams* v. *Lawson,* 17 Gratt. (58 Va.), 250. Being of opinion that the publication in question is libelous on its face, plaintiff was entitled to recover without proof of special damages, no evidence having been adduced to establish the truth of the defamatory statements contained in the article concerning the plaintiff. The instructions of the defendant, submitting to the jury the right of plaintiff to recover any damages constitute reversible error, for which the judgment of the circuit court will be reversed, the verdict of the jury set aside and a new trial awarded the plaintiff.

*Judgment reversed; verdict set aside; new trial awarded.*